The opinion of the court was' delivered by
DüNCAN, J.
This was an action of debt oh a single bill, given by plaintiff in errdr, defendant below, to defendant in error, for 2,310 dollars, on what the partiés went to trial, On the plea of payment, with leave to give the special matter in evidence, Under this plea, the defendant gave notice of special matter, which set out the defence, the consideration for which the bill was given, and the failure of that consideration. The. notice was as follows, (here his Honour read the defendant’s notice of special matter). On the trial, the plaintiff gave in evidence, the bill, and conditions of sale, referred to in the bill, and proved a tender of conveyance, duly acknowledged, and a demand of the purchase money. The defendant declined receiving it, saying, “when the Sheriff made him a clear title, he would pay the money ; but that he was not ready at that time;” and further proved, that at the time of the sale, the defendant read a paper, signed by Henry Friedly, Senr. cautioning the bidders not to bid for the property, as the title was not in Henry Friedly, Jun., but in Henry Friedly, Senr., and that there were many good bidders at the sale. ■
The defendant then offered in evidence, pursuant to his notice. *161 “ a deed, dated May 24th, 1817, from Henry Friedly, Jr. to Henry Friedly, Senr., to shew the title was not in the defendant in the execution, as whose property it was sold.” This evidence was objected to, and was not received, and exception taken. The jury gave a verdict in debt for a numerical sum, beyond the sum demanded by the writ or declaration. The extra sum, by calculation, appears to be the interest due on the bill, and in strictness ought to have been given by the name of damages.
On the merits, besides the rejection of the evidence, the defendant below, plaintiff in error, contends, though the objection does not appear to have been made in the Court of Common Pleas, that no action could be supported, until there had been a resale, and that only for the difference, if the second sale was for a less sum
He makes objections to the form of the proceedings; to the declaration, because it sets out no breach of the conditions of sale, or that there was a sale; shews no cause of action, or title to the money demanded; to the verdict, because the verdict and judgment are for a debt greater than plaintiff demands. The notice of the special matter is to be_ considered in the light of a bill in equity, to be relieved from a legal obligation, which, in conscience, ought" not to bind him. It states jno fraud committed on the vendor by the ven-dee; no misrepresentation; no concealment; no ignorance of facts; but seeks protection and absolution from his obligation, by reason of a fact not only known to him, but which he, as agent of Henry Friedly, Jr., in order that there might be no pretence of a purchase without notice, publishes at the time of sale. For if he did not act as the agent of Henry Friedly, Senr. he would be committing a palpable fraud, in exciting apprehensions as to the title in the minds of the other bidders and thus obtaining property at an undervalue, and if he did, and afterwards bought, he would be presumed to have knowledge of the title, and to have bought confident in his own knowledge of the law. Now in such a case as this, it a man has knowledge o.f the fact, and acts presumptuously on bis own opinion of the law, though mistakenly, if not fraudulently drawn into the mistake, that is no ground for relief in equity. I speak of sales by judicial process, and contracts between man and man, which was the case of Steinhauer v. Wit-man, 1 Sergt. & Rawle, 438. That case is not well understood. It does not go to the wild length, as some have supposed, that a man who purchases a title, with all its defects and imperfections, and whose conveyance contains no covenant of warranty, is not bound to pay the bonds he has given for it. For Mr. Justice Yeates, the great advocate for the departure from the general rule both of law and equity, of caveat.emptor, in the sale of lands, yet restrains its operation; for he puts it on a very rational principle. The obvious and plain rule, he says, is, “ what was the true meaning of the contracting parties; was it contemplated mutually, that the purchaser should hold the land under a good title, or that he should *162 run his chance of getting a title and be exposed to all hazards,’" page446. And in 447, resting it solely on the foundation of usage, he observes, “I have asserted the general understanding to have been that in all eases, unless where it plainly appeared that the purchaser agreed' to run the risk of the title, either by special contract, or where it might be fairly inferred from the consideration money, being highly inadequate to the value of the premises, at the time of .the contract, he might defend himself in a suit for the consideration money, by shewing that the title was defective, either in whole or in part, whether there was a covenant of general warranty or other engagement, on the part of the vendor, that he had a good right to convey, or of quiet enjoyment, or the like covenants, or not.” The nature.of a Sheriff’s sale, it is well known, is a sale of the defendants title. He conveys to the purchaser á free and clear estate, as fully and amply, as they were in the debtor. The Sheriff enters into no covenant. Inadequacy of price alone is no objection to a sale under process of law. 11 Johns. 555. The doctrine in Steinhauer v. Whitman, has ño relation to sales by a Sheriff on executions. It is not pretended by any one, that the usage asserted and maintained by Judge Ye ates extended to them. If any fraud was practised on the purchaser, or any mistake in the description, application' should be made to the court at the term at which the writ is returnable to set aside the sale. I do not say, that the neglect of this would prevent a purchaser from setting up this defence to an action by the plaintiff. But the acquiescence would diminish the force of the objection, though if the court refused to set aside the sale, it might not be conclusive. But this Is not a case of fraud, either ’alleged in the notice, or offered to be proved at the trial. The deed from Henry Friedly the younger to Henry Friedly the elder, was offered to show, that the title was not in the younger Friedly. The question is then reduced to this single point, can a purchaser, having direct notice at the time of sale, that the defendant in the execution, has sold and conveyed the estate before the judgment, set up that conveyance as a defence in a suit for the purchase money by. the Sheriff. It is conceived, but one answer can be given to this question, that he cannot. It would obstruct the recovery of all debts, if this could be done: for by a family arrangement, friends might again and again bid in the property, and then defend themselves from payment, on the want of title. It is a mistake when it is supposed, that the Sheriff sells a sound title. He sells the claim of the defendant in the execution, and no more, as free and clear an estate as the debtor held; and- the rule of caveat emptor, is binding on every purchaser at Sheriff’s sale. Fraud, a clear mistake in the description of the property by the Sheriff, its situation, its dimensions; would raise a different question: but even in these cases, the purchaser ought not to lye by, when he has obtained the knowledge, but should move the court to set aside thesale,and under some circumstances,long delay after disco *163 very ,wouldamounttoanabandonmentof the objection. One canhow-ever lay down no rule as to this. Every case depends on its own circumstances. If the defendant in the execution or judgment creditors, had been dissatisfied with this sale, on the ground that the property sold at a great undervalue, on account of the notice, a court of Justice would readily sustain the objection: for it is a most suspicious circumstance, where the purchaser either acting for himself, or as agent for another, publishes the notice of adverse title, keeps off other bidders, and then buys himself; but it is a defence against payment of the purchase money, by such bidder, that would not be countenanced in a court of equity, because, without giving any opinion on the purity of this particular transaction, it would open wide the door to frauds in conducting Sheriffs sales. It is better for the suitor and for the purchaser, that it should be distinctly understood, that a sale cannot be shaken, except in cases of fraud, or misdescription of the property in some material respect. It is not a just rule, that will not work on both sides. Now it would work most unequally, that a purchaser should bid in an estate at undervalue, on account of some supposed defect of title, and that he should not be bound to pay, unless the title proved good, on atrial for the purchase money; that though he bought only the title of defendant, whatever.it was, still that he was not bound to pay, unless it w*as a clear one. There could be nothing more mischievous, than relaxing the binding nature of these sales, where they are fair. If the general rule presses hard in a particular instance, it compensates for the hardship of the particular case by its general benefit, security and certainty. It would be manifestly unequal and unjust, to release the purchaser from his bid, on account of defective title, the very cloud which diminished its value, and not to relieve the defendant in the execution, when he was able to dissipate that cloud which sacrificed his property. But the duties of both are plain: the purchaser to examine the title before be buys; the defendant at the time of Sale, to show its validity, to clear up as- far as-he can, any objections to it. But if the purchaser will not inquire, he should suffer for his confidence: gnd if the defendant in the execution, will be silent and'not show his title, he should suffer for his obstinacy. If the sale is a fair one, it binds both, if tainted"with fraud, it binds neither, unless he is a party to the fraud. The conveyance was, therefore, properly rejected. It was irrelevant to the issue. It ought not to profit the defendant, nor injure the plaintiff.
It is very questionable, indeed my own impression, and here I only state my own impression, is, that the objection as to the resale, is not raised on the record. The court was not called to give any opinion, nor is there any evidence stated. There might or there might not be a resale; the point was not made; the bill of exceptions only brings the question of evidence as to the conveyance, and that alone before the court.' But if it were before the court, we are all of opinion that the sheriff could support an action on this obligation without a resale. The case of Webster and Ford v *164 Hoban, 7 Cranch. 399, differs in many material respects. There it was an action on the sale itself, here it is on an obligation given for the purchase money. There the material condition was, that the purchaser should secure the purchase money, payable in 6 and 12 months, and should have 30 days to comply with the article, at which time, in case of compliance, he was to receive a good and complete title to the property, or failing to comply within 30 days, the property then to be sold on account of the first purchaser: here the whole purchase money was to be paid in 10 days, but the sheriff’s deed was not to be delivered for more than one month afterwards, and then to be only a conveyance of the title of the defendant in execution. There the court held the resale on account of the purchaser would entitle him to any surplus: but here the resale was at the risk of the purchaser, and on a resale made by a sheriff for the purchaser’s non-compliance, the purchaser would not be entitled to any surplus, though he would be accountable for any deficiency.'
But the ground of that, decision was, that the action would expose the defendant to have damages assessed against him by some uncertain, arbitrary, and unsatisfactory rule, which might be adopted by. a jury, and of the advantages which were reserved to him by the terms of the auction, the plaintiff could notdeprive him. But that reason does not hold here; for the action is not for damages but debt in numero ascertained by defendant’s own obligation. Besides.) the sheriff, if he'had not given the obligation, might have.returned the property to the next bidder, sold again, and have sued him for the difference; or might have made a special return, that the premises were knocked down to the defendant, and that he not having paid the purchase money, therefore the premises remained unsold. Zantzinger, v. Pole, 1 Dall. 458, Or, he might, as he has done here, return them sold, tender the conveyance, and sue for the purchase money on the obligation. For the obligation created a duty to pay, and the remedy of the sheriff was cumulative, • We have now come to the two formal objections,' and as the de-fence is not recommended to our consideration by any equity, and the plaintiff has a clear legal right, we would reluctantly send his cause back after it has been tried on its merits, on nice technical objections, not in any degree affecting the merits. But if the de-fence did appear to us not to be the most gracious, still, if there is uncured and incurable error, then the judgment must be reversed. And I own I was struck with the imperfection of the declaration. It sets out the conditions of sale, but'does not alledge that any such sale was made. It is but the fragment of a count, and if this declaration had been demurred to, the demurerr must have been sustained. But the plea and issue and verdict cured the defect. The plea of payment admits the declaration to be good. But it is not necessary to depend on such general dictum; for in a much contested and, well considered case in this court, Thompson v. Musser, 1 Dall. 460, the action was in debt in the detinet on a penal bill for *165 200,000 pounds weight of tobacco, by; which Thompson bound himself in the penalty of 200,000 pounds to pay 100,000. The specific error alleged was, that the declaration did not .state that Thompson did not pay the smaller quantity of 100,000 on the day fixed for payment, so that no cause of action was shown to have accrued to the plaintiff below for the penalty. The court decided that the defect in the declaration with respect to the amount could not be .taken advantage of in error, though it might, on demurrer; it was cured by pleading over in chief, and by the verdict. But the notice of the special matter is to be considered as a part of the pleadings, and that states the consideration, and that a sale was made, and the obligation given for the purchase money, and in Zerger v. Sailor, 6 Binn. 24, it is stated as a general principle, “that where several things are to be done by the plaintiff, precedent to the performance of the defendant’s part of the agreement, it is necessary for the plaintiff to aver performance of all that was to be done by him; hut if the performance of apart is not averred, and it appears by the defendant’s pled, or by his notice under the plea, that the part in question was performed, the declaration is cured. And the court there say, that it matters not whether the allegation be in the plaintiff’s declaration, or defendant’s plea, or notice! it is sufficient if it appear on the record in either.'
The last objection is to the form of the verdict and judgment. The verdict is doubtless informal, for it ought to have been taken in debt for the sum in numero demanded, and for the rest in damages as the whole debt was found. But if we were to scan with scrupulosity the records of the courts in Pennyslvania, examine them with scrutinizing eyes, very few of them could bear this inspection: for in many eases we have brought before us most mishapen records. Our records are not drawn up with precision and accuracy, and the court has from necessity not exacted a rigid adherence to forms, but requires a substantial compliance with the requisites of law, and if after every reasonable allowance, this is not found in the record, the proceedings will be judged erroneous. But strict form is not now required in verdicts. It is orily to be understood what the intention was, agreeably to which the verdict may after-wards be moulded into form. The .intention of the jury is plain to a demonstration, to find the whole debt and the sum beyond that in interest, and the justice of the case clear, and the mode of entering the verdict is the act of the clerk, a mere clerical mistake, Hob. 45.2 Burr. 700. Thompson v. Musser, 1 Dall. 462. And Hobart lays down a just rule, that though the verdict may not conclude finally or punctually in the words of the issue, yet if the point in issue can be concluded out of the finding, the court shall work the verdict into form, and make it serve according to the real justice of the case. As this might have been amended before writ of error brought, it is amendable after, andifnot doneby theinferior, may *166 be done by the superior court, Gilb His. C. P. 19, 172. If the verdict is good, the judgment is likewise so; for being entered generally, if drawn at large, it may be put into form, and as the merits have been tried, justice must be obtained, without being entangled in technical niceties, Thompson v. Musser. 1 Dall. 462. This is a common error in taking verdicts in debt, and communis error facit jus is a maxim which ought in this instance to be respected, if in any.
Judgment affirmed.