IN

# THE SUPREME COURT

OF ·

# PENNSYLVANIA.

---

WESTERN DISTRICT, SEPTEMBER TERM, 1830.

---

HENRY HOLDSHIP *against* PATRiCK DORAN, *for use.*

### IN ERROR.

An action against a bidder at a sheriff's sale, for the difference between the amount of his bid, and that at which the land was struck -down at a subsequent sale, must be brought either in the name of the sheriff, on the privity of contract, or in that of some one who was injured.

A sheriff may, after the return day of his writ, sustain an action against a bidder at his sale, to recover from him the amount of his bid, without having first tendered to him a deed.

Unless a bidder is notoriously insolvent, the sheriff cannot, long before the return day of his writ, make a return, that the purchaser has not paid, and therefore unsold for want of buyers: and where he does so, and has made no demand, and has no evidence to justify him in so doing, the bidder is not liable for a difference in price.

In ordinary cases, there is no reason to justify a sheriff in demanding the money, on a sale of lands, before he can give a title, or the purchaser can get possession.

When a suit is brought "*for use,*" without specifying the persons for whose use it is brought, it is error in the court, to refuse to compel the counsel for the plaintiff to put the names of the persons for whose use it is brought upon the record, when requested by the defendant so to do.

THIS was a writ of error to the Common Pleas of *Allegheny* county.

The facts of the case are thus stated by his Honor who deliver- ed the opinion of the Court:

Of November term 1820, *N. Burt* entered a judgment on a bond and warrant of attorney against *Patrick Doran,* for $729 15.

2

(Henry Holdship *v.* Patrick Doran for use.)

To Aug. T. 1822 a *Fi Fa* issued on this judgment, and was levied on a house and lot in Pittsburg, particularly described: the defendant waived the necessity of an inquisition. A writ of *Vend. Expos.* issued to April T. 1823, and was returned sold to *A. Brackenridge* for $1,500. On motion, and after taking depositions, and a hearing by the Court, this sale was set aside at Aug. T. 1823. An *Als. Ven. Expos.* issued to Nov. T. 1823, which was returned, property sold for $2,850. On motion and by consent, this sale was set aside at Feb. T. 1824. It may be here stated, that in the course of the cause, *A. Brackenridge* was examined several times, and was asked by the defendants below, for whom he bid at April and Nov. 1823, and to whom the property was sold for $2,850, at Nov. T. 1823, for the purpose of proving by him, that he was the bidder at the last sale, and that at both, he bid for *James Gray*. This evidence was objected to by the plaintiff, and over-ruled.

A *Plures Ven. Expos.* issued to Aug. T. 1824: upon which a return was made on the 31st of July 1824: (before the return day) "Property sold to *Henry Holdship* for $2,500, but the purchase money not being paid, therefore I return unsold for want of buyers." A second *Plures Vend. Expos.* issued to Nov. T. 1825, which was returned sold to *Brackenridge;*" this sale was also set-aside, by order of the Court: this was on motion and affidavit of *Doran* and others; and the plaintiff made no objection. A third *Plures Ven. Expos.* issued to May T. 1826, was returned " Property sold to *Joseph Caskey* for $2,010."

This suit in the name of *Patrick Doran* for use, against *Henry Holdship,* was to recover the difference between the bid of *Holdship* and the price for which the property was sold to *Caskey,* and also interest on that difference.

It was proved that *James Gray* and not *Doran* employed the counsel who brought the suit; it was admitted the suit was not for the use of *Doran,* but stated to be for the use of his creditors. The defendant repeatedly called on the plaintiff's counsel to name the persons alleged to be interested, and applied to the Court to compel them to state on the docket, for whose use the suit was trying ; this the court refused to do.

To prove the liability of *Holdship,* the sheriff was examined, who knew nothing about it, except that he signed the return as drawn up by his deputy. The deputy testifies, that *Holdship* was not at the sale; but that somebody told him that the bid was for *Holdship,* but that he never saw or spoke to *Holdship* about it;—he never asked him for the money or whether he would take the property.

(Henry Holdship *v.* Patrick Doran for use.)

*D. Scully* testified, that on the day of the sale, he met *Hold-ship* and told him, that if the property sold for $2,500, it would cover his *(Scully's)* judgment. *Holdship* said he would not attend, but told *Scully* to bid $2,500 for him: and that he did so, and told the deputy sheriff to enter it sold to *Holdship;* that he had no conversation with *Holdship* about it afterwards till lately.

*A. Brackenridge* testified, that he was attorney for *Burt,* the plaintiff, and interested in the judgment, and attended the sale, but did not know who was the bidder at the time the property was struck down;—that he directed the return to be made;—that *Holdship* was not present, and he never spoke to him about it.

*J. S. Craft* testified, that being interested for a part owner of the judgment in the name of *Scully,* he, sometime after the sale, spoke to *Holdship* about the money, who replied that he would consult *Mr. Baldwin,* and let him know;—the matter was never mentioned between them afterwards.

The defendant then gave in evidence the following paper, it being first proved by *Mr. Craft.*

"*Gray* to purchase in his own or other's name; whatever may be the public bid, there is to be $4,500 allowed *Doran* for his interest in the premises levied on. All the judgment notes or advances now paid or incurred by *Gray,* on account of this building, including the pledge of Murry's lot to *Gray,* to be part payment of said $4,500. The remainder to be paid in three equal annual instalments from the day of sale without interest—If within two years are sold by one or either of them or *P. S. Smith. Gray* to receive back his money and interest without accounting for the rent received by him above the ground-rent—surplus to *Doran.* First quarter's rent received by *Gray* on 1st July."

        Signed                                    *J. Gray,*
                                                   *P. Doran.*

This agreement had no date, but it was admitted and proved to have been made in the spring of 1823: and *Mr. Craft* proved that it was to have been drawn into form by him, and was left in his keeping; it was considered binding by both parties, and had more than once been produced by him in Court, and before arbitrators—that if this money is recovered, he will claim it, and he expects it will go to an assignee of part of *Scully's* judgment.

*Mr. Brackenridge* proved, that this suit was brought by him, that he was employed by *Gray* and no other:—that *Gray* told him this money, if recovered would go to cover *Scully's* judgment and that of *Harman & Co.*

(Henry Holdship *v.* Patrick Doran for use.)

*James Gray* was then sworn and proved, that *Caskey* bid for him, and that he immediately went into possession; that the before-mentioned agreement is binding, and he is bound to account to *Doran* for $4,500:—that he was responsible for a good deal of money for *Doran*:—that he considers himself liable to judgment creditors for the amount bid, and no more:—that the property is now worth $7,000, and he gets $450 per year rent for it.

A number of judgments against *Doran* were read in evidence, and much evidence about their payment was given; some of them were in part paid, but in all it did not amount to near $4,500.

The questions, to whom was the property sold for $2,850, and why was that sale set aside? was asked of all the witnesses but *Scully*, and the Court decided that question, and all questions on that subject to be improper.

Several points were put by the plaintiff and the defendant, to the Court, upon which they were requested to charge the jury; and fifteen errors were assigned in their answers thereto: all of which sufficiently appear in the opinion of the Court.

The jury found a verdict for the plaintiff, for the full amount of the claim.

*Fetterman* for the plaintiff in error.

This suit cannot be maintained in the name of *Patrick Doran*, because he has sustained no damage. By the private agreement between him and *Gray*, he was to receive $4,500 for the property, be the public bid what it might. How then can he say that he is injured because *Holdship* did not take the property at $2,500, when he was to receive $4,500 for it? He has been rather benefitted than injured; for if *Gray* had not got the property and *Holdship* had taken it at his bid, *Doran* might not have been able to compel *Gray* to account for the $4,500.

He also contended, that no case could be found in the books, in which the action had been brought in the name of the defendant in the execution to recover the difference of the sales. Suppose a recovery, to whom does the money go? Why, to the judgment creditors of *Doran;* and it appears there are many of them. If they have sustained loss, the action should have been in the name of the sheriff—9 *Serg.* & *Rawle,* 156, *Fridley* v. *Scheetz.*

He then contended, that the sale of this property had not yet been completed, and therefore it could not yet be ascertained, who was injured, and referred to the testimony set out in the respective bills of exception. That the last sale to *Caskey,* as agent of *Gray,* was not consummated, no deed having been delivered. That a sheriff's sale of itself, does not pass the title of the debtor, 2 *Caines,* 63. 2 *Johnson,* 261. 8 *Johnson,* 548. That there must be a deed made, acknowledged and delivered; and until

(Henry Holdship *v.* Patrick Doran for use.)

that is done the title has not passed, and the sale does not operate. 1 *John Cases* 114. The cases above referred to also shew, that if a deed with a receipt on it has been delivered as an escrow, it does not pass the title, until the money is paid:—and that the money must be paid in a reasonable time; at the return of the writ, or next term afterwards. 8 *Johns.* 553.

That in Pennsylvania, *Purdon,* 265, the sheriff must give the buyer a deed duly sealed and acknowledged in open Court, and that before the purchaser can institute proceedings to obtain possession, he must have his deed acknowledged, and certified under seal of Court. *Purdon.* 760. 6 *Serg. & Rawle,* 171.

Although a deed might be good under special circumstances without acknowledgment, 2 *Yeates,* 458, yet it is open to all objections which might be made on being offered in Court without acknowledgment 2 *Yeates,* 456–8.

That an acknowledgment is necessary to the validity of a sheriff's deed: 3 *Yeates,* 406: and must be in the county where the land lies, 1 *Serg. & Rawle,* 96–101; or it cannot be received in evidence; nor is it admissible in evidence if acknowledged before the return of the writ. 3 *Yeates,* 405. 4 *Yeates,* 212, 14.

There was nothing to shew that this deed had been delivered; the sheriff swears that it had not; and he could not do it, unless he was satisfied about the payment of the purchase money. The sale is not then complete:—the *quantum* of injury, if any, not ascertained, nor is it ascertained who are the sufferers. If the sale to *Caskey* is set aside, and the property is sold again to a greater amount than *Holdship's* bid, *Holdship* clearly is not responsible. But supposing that the deed had been delivered to *Caskey,* and the last sale thereby consummated, no demand was made of *Holdship* of the purchase money, neither before nor after the return of the writ of *Venditioni Exponas* on which the property was sold to him.

How, unless a demand was made, can it be ascertained whether he is able to pay or not? it is enough, under the decision of *Pentland* v. *Gray,* decided here at last term, if the sheriff has the money at the return day of the writ. And it has been decided, that a purchaser is not bound to pay unless the sheriff is ready to deliver his deed.—See 2 *Serg. & Rawle,* 426. 7 *Serg. & Rawle,* 199. No notice was given to *Holdship* of the property having been struck off to him; and the sheriff never conversed with him about it.

He also contended, that the Court were wrong in not having the name of the individual, for whose use the suit was brought, placed on the record. Every man, when sued, has a right to know his antagonist. If the matter were fairly managed by those interested, what objection can there be to placing the name of

(Henry Holdship *v.* Patrick Doran for use.)

the plaintiff on record.   For his part he had never before known it to be refused.

That it was manifest the Court erred, in not permitting the several interrogations to be put to the witnesses.   If the transaction was fair and honourable, what objection could there be in suffering the answer to be given?

It appeared from the recent decisions of our Supreme Court on the subject, that they were anxious to place sheriffs' sales on fair ground; to have them conducted in a way alike advantageous to. the interests of the debtor and his judgment creditors.   They had taken a stand against secret liens, and were anxious that property should bring a fair price, and the purchaser take a good title. Why then not have their respective sales on *Burt's* judgment explained?   Why in a suit, where *Patrick Doran* denies that the money is coming to him,—in a suit brought by the council of *Jas. Gray*, who had made the secret agreement with *Doran*, and to whom, if to any one, it was presumable the money was coming, .should not every thing be explained, especially when the gravamen alleged is, that *Patrick Doran* is injured and therefore brings suit.

The secret agreement was clearly a manœuvre to benefit *Gray*, at the expense of *Doran's* judgment creditors.   It, too, has been treated as an executed contract, by both parties.   *Gray* has got the possession: and the sheriff's sale between them was a mere mode of conveying the legal title.   Did not justice require that that agreement should be made known at the sale?   It was concealed by the very man who directed this suit to be brought, because, as he said himself, if he had produced it, it might have raised the bid for the property.   Had that been done, *Holdship* would have been safe from all possibility of loss.   Will *Gray* then be allowed to take advantage of his concealment of this private agreement.

*Gray*, in this case, after the making of that agreement, may be considered as a trustee, for *Doran's* creditors.   If so, and he pays the difference between *Caskey's* bid $2,010, and $4,500, they are not injured, as they will receive much more than *Holdship* was to have given for the property.

The counsel then noticed the points made in the other assignments of error particularly, but it is unnecessary to state them, as they are sufficiently adverted to in the opinion of the Court.

*Burke* and *Kennedy* for defendant in error (whose arguments the reporter did not hear.)

W. Forward in reply.

(Henry Holdship *v.* Patrick Doran for use.)

The opinion of the Court was delivered by

HUSTON, J.—We are of opinion that there was error in several parts of this proceeding. In the first place, by concealing the names of the persons for whose use the suit was brought. *Scully* and others were admitted as witnesses, and without their testimony the plaintiff could not have stirred one step. Admit that *Holdship* had behaved amiss, it is not true that any or every person could sue him, nor that those who could recover the money and keep it should be witnesses against him. Nor is it true that if *Holdship* had not complied with his engagement to the sheriff, that any person or every person could sue him for his violation of it. The suit must either be brought by the sheriff, on the privity of contract, or by some person who was injured. *Doran* is not injured, he gets $4,500 for his property, instead of $2,500. *Gray* is not injured, he has been enabled to comply with his engagements with *Doran*, and is relieved from a suit against him on his agreement, which he might have expected, if he had suffered the property to be struck down to another for a sum less than $4,500. It has been stated that there are other creditors, but we have not either their names or the amount of their debts; for any thing which appeared in this cause, a large portion of the $4,500 will go to *Doran*. To be sure the bid at sheriff's sale does not cover all, but when the balance comes to *Doran* it may be reached.

There are some acts so wicked in themselves, or so contrary to an express legislative provision, that any person may prosecute the perpetrator, and punish him by indictment; and some, in which any informer may sue in a civil action and recover a penalty prescribed by law; but the fact of bidding at a sheriff's sale is not one of these: it is in the law, a mere breach of contract. The bidder may be sued for the amount of his bid by the sheriff, and be compelled to pay it, in some cases, though not always: or he may in some cases, though not in every possible case, be liable for the difference, if the land is sold a second time and for a less sum. His breach of contract is as great, though the land sells for more at a second sale, and yet in such case he is not liable for damages, for there are none. It is not therefore the omission to pay, but the injury consequent on such omission, which subjects him to damages. The plaintiff must then be, either the sheriff, and he is the proper plaintiff; or if any other can sue, it must be a plaintiff who can prove that he has sustained damage. I do not know any case, except that of a penalty by positive law to an informer, in which a civil suit can be sustained by a person with whom no contract has been made, and who has sustained no injury. In this case there is no pretence of injury to *Doran* or

(Henry Holdship v. Patrick Doran for use.)

*Gray,* and no other has sued: and it is immaterial whether they cannot or will not name the person injured. I hope it is the last time a court will sit to inquire and decide for whom it may concern, without knowing whom it does concern, or that it concerns any one. If it concerns *Scully,* then he should not be a witness ; that he may recover on his own testimony, is what, if it was done in this case, I hope will not be done again.

It has been assumed in this case, that the bidder is liable in all cases for the difference, when the property is sold for less at a subsequent sale; but this is not universally true. There are many cases in which the bidder will not be compelled to pay the price bidden ; he is not bound to do so in any case of fraud in the sale; and whatever will set aside, and does set aside the sale, discharges the bidder from paying the bid, and from paying the difference if sold afterwards for less. There is no ground for the assertion, that *in every case* the bidder who does not pay, is liable for the amount of his bid, or for the difference of price, if sold for less: his liability may exist or not exist according to the facts of the case.

As a good deal has been said about the power and duties of the sheriff, and of the highest bidder at a sheriff's sale of lands, and as the decisions and *dicta* do not exactly agree with each other, I shall notice most of them.

In 1 *Dall.* 419, it is said, if the highest bidder is unable to pay, the sheriff may make an offer to the next highest: And if the property is not paid for after sale, the return should be, "that the property was knocked down to A B for so much,—that said A B has not paid the purchase money, and that therefore the property remains unsold." I would infer that the Court meant a demand of the bidder must be made ; how otherwise could it be ascertained that he was unable to pay.

In *Vastine* v. *Fury, 2 Serg. & Rawle,* 426, it is decided, that a purchaser of land at sheriff's sale is bound to pay only when the sheriff is ready to deliver his deed. That a purchaser from whom the money had not been demanded, and who had neglected to pay the sheriff before the return day of his writ, but who, on hearing that it was returned unsold, because he had not paid, immediately went and tendered the money to the sheriff, was not in default, but shall hold the land against the purchaser at the second sale. This case was fully considered, and for a long time was supposed to have settled the law.

In *Smith* v. *Painter, 5 Serg. & Rawle,* 223, the deed was made and rendered before suit was brought against the bidder for the purchase money ; and there was nothing said on this subject; but it is there said, a purchaser may be relieved from his bid, if there

(Henry Holdship *v.* Patrick Doran for use.)

is any fraud in the sale, but that he ought to apply at the first or second court.

In *Hart* v. *Greenough*, 7 *Serg. & Rawle*, 197, the sheriff had made and delivered the deed: but in this case the *dictum* is first used, that the sheriff may sue for the purchase money without having acknowledged and tendered the deed: but it is not said that this may be done before the return day of the writ.

In the case of *Fridley* v. *Scheetz*, 9 *Serg. & Rawle*, 156, there is a *dictum*, that the sheriff may tender a conveyance and sue for the purchase money.

In *Negly* v. *Stewart*, 10 *Serg. & Rawle*, 207, no facts are stated, except that it appears the money was to be paid on a certain day: but the broad position is stated, that immediately on the property being struck down, the purchaser must pay the money, or the sheriff may set it up again, and if sold lower, may charge the first bidder with the difference. This is in direct contradiction of the case of *Vastine* v. *Fury*, 2 *Serg. & Rawle*, 426, and that case was not cited in the argument or referred to in the opinion. As an universal proposition, I do not agree to it. The practice in different counties differs greatly as to conducting sheriff's sales. In some counties the sales are uniformly on the return day of the writ, or by adjournment, on some day in the same week, which is always court week: and in such cases I agree entirely to the case in 10 *Serg. & Rawle*, 207. But in other counties the sales are uniformly many days or weeks before the return day. In some, the bidder always gives a bond, and warrant to confess judgment for the purchase money, payable on the return day: in others, he signs conditions of sale, which are to pay on the return day: and some other varieties. Now in these last cases, where the practice has been to take a judgment-bond or note payable on the return day, it would be unjust to vary the practice, without reason and without notice. The rule must be uniform in all sheriff's sales in the same county: or if a case requires a difference, the terms must be publicly proclaimed before and at the sale.

On a sale of personal property, by an officer, the goods are delivered at once, and the money is then demandable: but I deny that the money can be recovered, unless the goods are delivered or ready to be delivered, unless the terms of the sale are special.

What would be gained, when the sale is one or two months before the return day of the writ, by requiring the bidder to pay on the spot. The plaintiff would not get the money : he could not sue the sheriff for it, or rule him to pay it; and as the sheriff would be answerable if he paid it over, and the sale should be set aside, he never would pay it over.

3

(Henry Holdship *v.* Patrick Doran for use.)

Many men are perfectly able to pay money at the end of a month or week, who have it not in their pocket at the moment of a sheriff's sale. It would, then, occasion loss to defendants, to require money to be paid long before it can be used; and the law was made for defendants, as well as plaintiffs: it would be a loss to younger judgment creditors, in the case of an insolvent defendant: and no advantage would result to any one, except to sharpers and speculators at sheriff's sales.

It would not be practicable for this Court to lay down a rule which would extend over the state; for the Courts of Common Pleas have the right to make their own rules. And we can still less decide on every case which has accrued, according to a rule not yet made. We have no evidence of any uniform practice in this county. The practice in this particular instance was a bad one. The fact that the house in question had been sold, and the sale set aside three times, does not make the case stronger against the defendant: we have no evidence that it was set aside because the bidder had refused to pay: I may say it was not for that reason. We have no evidence that the return in question was made because *Holdship* was unable to pay. I presume there was another reason.

On the whole, I see no reason which, in ordinary cases, will justify the sheriff in demanding the money on a sale of lands before he can give a title, or the purchaser can get possession. I think he may sue if the money is not ready at the return day, without tendering a deed; or he may, if the money be not then paid, make the special return directed in the case in 1 *Dall.* 419. Unless the purchaser is notoriously insolvent, he cannot, long before the return day, return that the purchaser has not paid, and therefore unsold for want of buyers: and where he does so, and has made no demand, and no evidence to justify him in so doing, the bidder is not liable for a difference in price.

Upon the evidence given, the defendant is not liable, on the ground stated in the first part of the charge of the court; nor on any other ground as the case now stands.

Ross, J.—Dissented, on the ground that the sheriff has a right to demand the money before the return day of his writ, or in other words, before he becomes liable himself.

*Judgment reversed.*