## M'Coy *against* Lightner.

A certified copy of a contract for constructing a section of the Pennsylvania Canal, from the auditor general's office, is legal evidence, without the production of the subscribing witness.

In an action against partners, on one of whom only the process was served, the plaintiff may give evidence of the declarations of the partner not served with process.

In an action for the price of blacksmith-work done, it having been first proved by the journeyman that he made the entries on a slate for two or three days until it was filled, when it was transferred to the book ; that he did not remember the items, but knew the account amounted to three or four dollars : it was held that the book account, which was for three dollars and a half, should be received in evidence.

Evidence of the existence of a partnership having been given, the partner upon whom the process was not served, is not a competent witness for the defendant, although a release was executed to him.

When the existence or non-existence of a partnership depends upon written evidence, it is the province of the court to determine upon their legal effect.

ERROR to *Huntingdon* county.

This was an action of *assumpsit* by Joel W. Lightner, against William J. M'Coy and John M. M'Coy, trading under the firm of M'Coy & M'Coy. The process was served on John M. M'Coy alone. The facts of the case are fully stated in the opinion of the court.

*A. P. Wilson,* for plaintiff in error, contended that it could not have been the intention of the legislature to make copies of the contracts for constructing the canal evidence, for these contracts were made in pursuance of the act of 24th March 1828, and the act which makes copies of papers from the auditor general's office evidence, was passed 31st of March 1823.  The defendant on whom process was not served was a competent witness.  Taylor *v.* Henderson, 17 *Serg. & Rawle* 453.  The book was not the original entry, and should not have been received.  Kessler *v.* M'Conoughy, 1 *Rawle* 436 ; 12 *Serg. & Rawle* 78—86 ; Sterrett *v.* Bull, 1 *Binn.* 237 ; Curran *v.* Crawford, 4 *Serg. & Rawle* 5 ; Crouch *v.* Miller, 10 *Serg. & Rawle.*

*Bell* and *Wallace,* for defendant in error.  That the partner on whom process is not served *is an incompetent witness is* settled in Black *v.* Marvin, 2 *Penns. Rep.* 138 ; Williams *v.* M'Fall, 2 *Serg. & Rawle* 280.

The opinion of the Court was delivered by

KENNEDY, J.—This action was commenced by the defendant in

error against the plaintiff in error before a justice of the peace of Huntingdon county, by suing out a writ against him and his brother, William J. M'Coy, jointly, which was served only on the plaintiff in error, and therefore the suit was proceeded in against him alone. After a trial had before the justice, it was brought by appeal into the court of common pleas of that county. The object of the suit was to recover the price of corn, oats, and other things alleged to have been sold and delivered, as well as the price of blacksmithwork alleged to have been done by the plaintiff below to and for the defendants at their request. The articles sold and the work done were said to have been furnished and performed for the M'Coys in 1831 and 1832, while they were engaged in constructing and making the seventy-third section of the Juniata division of the Pennsylvania canal, according to a contract entered into by them with the state for that purpose. William J. M'Coy attended personally to the work of the canal; John, it seemed, was there only occasionally, and did not appear to be actively employed in attending to it at any time. But to show that they were jointly interested in it, and bound to the state for the performance of the work, upon the completion of which they were jointly to receive the stipulated compensation, the plaintiff below offered to read in evidence a duly certified copy from the auditor-general's office of the agreement made between the state, and William J. M'Coy and John M. M'Coy for making the seventy-third section of the canal above mentioned. It was objected to by the counsel for the defendant John M. M'Coy, as not being admissible evidence of the fact that any such agreement as it purported to be a copy of was ever made. That the original being the best, if not the only evidence for that purpose, ought to be produced and the execution of it proved by the subscribing witness. The court however overruled the objection and admitted the evidence; to which the defendant below excepted. The plaintiff below next offered a copy of a receipt certified from the auditor-general's office in the same form, showing that John M. M'Coy, the defendant below, on the 1st of March 1832 had received 120 dollars upon the contract for making the seventy-third section of the said canal from the superintendent thereof on the part of the state. This was also objected to on the same ground as the copy of the agreement, but the objection was in like manner overruled, and exception taken to the opinion of the court thereon. These objections form part of the errors assigned. I, however, think the court was right in admitting the certified copies of the agreement and receipt. The act of assembly of the 25th of February 1826, *Pamph. Laws of* 1825-1826, *p.* 56, directs the canal commissioners in making contracts for the construction of the canal to have them reduced to writing, and to have duplicates thereof executed; and requires also, that in disbursing or paying out moneys on the same, duplicate receipts shall be taken, and that the agreements and receipts so executed and taken shall be filed with the state treasurer. This latter clause of the act, so far as regards the

[M'Coy v. Lightner.]

filing of these papers with the state treasurer, was repealed by the act of the 24th of March 1828, *Pamph. Laws of* 1827-1828, *p.* 226, and they are thereby directed to be filed in the auditor-general's office.

Now by the act of the 31st of March 1823, *Pamph. L.* 233, *Purd. Dig.* 282, " copies of all records, documents and *papers* in this office, when duly certified by the auditor-general, *shall be received in evidence* in the *several courts* of this commonwealth in all cases where the *original* records, documents and *papers* would be admitted in evidence." Hence it seems clear to me that without contravening the express direction of the act of assembly on this subject, the court below could not have rejected the copies offered in evidence. It is also manifest that this act, by making the certified copies evidence instead of the originals, dispenses with the necessity of proving the execution of them, which at common law would have been requisite before they could have been received in evidence ; because the copies alone being produced in court, it would be impossible in the nature of the thing that the subscribing witnesses should be called to prove their own handwriting upon the original when not present, or the execution of it, or of any agreement or instrument of writing of which the paper about to be offered in evidence was a true copy. It was no doubt considered by the legislature when they passed this act, that as most, if not all, the records, documents and papers filed or to be filed in the auditor-general's office were such as some officer or agent of the state was present at, at the time of their execution or being brought into existence, who had no interest in filing or permitting to be filed any other than were genuine and free from all fraud and imposition in being obtained, that there was no reason to apprehend that any injury could arise from making certified copies of them evidence. It is doubtless a regulation which promotes convenience, and if either party should wish to have the original in court, the act has made provision for that purpose.

The plaintiff below then produced Daniel Africa, by whom he proposed to prove that William J. M'Coy had admitted all the items of charge in his account except two, at a time when John M. M'Coy was not present, to which the defendant's counsel objected. The court however overruled the objection and admitted the testimony, which is assigned for error. After the plaintiff below had given evidence showing that John M. M'Coy was jointly concerned and interested in making the canal with William J. M'Coy, to whom all the articles charged in the account of the plaintiff below as well as the work, were delivered, to enable him to fulfil their contract for making the seventy-third section of the canal, can it be doubted that the admission of William was not evidence to charge them both, and of course John, in a suit commenced against both? It having been shown that they were jointly interested in the profit or advantage to be derived from making the canal for which the articles were furnished, and the smith-work done by the plaintiff below, and that

[M'Coy v. Lightner.]

William J. M'Coy attended personally to superintending and directing the work, as well as to procuring whatever might be wanting to carry it on, this was *prima facie* evidence to show that William had authority from John to make contracts for whatever might be suitable and necessary to accomplish the work in the names of both; and certainly, under such circumstances, whoever furnished articles or did work for that purpose at the request of William upon credit, without any special agreement, had reason to believe that he was parting with his property or performing the labour on the credit of both, and the admissions of William in all such cases are admissible in evidence to charge John as in this case.    Indeed it is too plain to be questioned.

After having given this evidence, the plaintiff below next produced his book of accounts, which he testified was his book of original entries till the 1st of December 1831, when he transferred all unsettled accounts charged in it from it to a new book, which from that time became the book in which he made his original entries.    He also stated that he made the entries in the book at the times of their respective dates; excepting the corn and the blacksmith-work.    This latter was kept first on a slate in the blacksmith-shop, where it was set down by the man in his employment as the work was done until the slate became full, and from that was then entered by himself in his book of original entries.    Sometimes he entered from the slate the work of two or three days at once, perhaps a week, but never more.

Douglass, the blacksmith who did the work and made the entries on the slate, was then produced, and testified that he worked in the blacksmith-shop of the plaintiff below; was hired to work for him by the month, and did work for William J. M'Coy for the seventy-third section of the, canal, which, according to the prices charged, amounted to between 3 and 4 dollars.    He set it down on a slate at the shop as it was done; when the slate became full, he brought it to the house of the plaintiff below, who transferred it to his book.    He put the dates to the entries on the slate, which would lie over Sabbath sometimes before they were transferred to the book. The witness being shown a specification of the smith-work charged in the book, said he could not remember the number of articles or items, but said the prices were the same, and that in the whole they amounted to 3 or 4 dollars.

The amount of smith work charged in the book is 3 dollars 50 cents.    The plaintiff below then offered his book in evidence to the jury, which was objected to by the counsel of the defendant below, but the court admitted the book, excepting the entries as to the corn, which were rejected, and the defendant below excepted to the opinion of the court, which forms another error assigned.

Kessler *v.* M'Conoughy, 1 *Rawle* 435, has been cited and relied on to sustain this error: it is, however, distinguishable from the present case.  In that case the book of the party was sustained by his own

[M'Coy v. Lightner.]

oath alone ; his journeyman, who made the entries first on the slate, from which they were transferred a week or two afterwards by the party himself, was not produced : but in the present case, the oath of the party establishing the entries made in his book, is fortified by the testimony of his hireling, who actually did the work, and made the entries on the slate as the work was done.  He also proves the amount of the work done to be about the same with that charged in the book, and the prices to be the same, though he cannot recollect all the particular articles of work done.  I think the book was properly admitted in evidence.

The next error assigned is, the rejection of William J. M'Coy as a witness, who is named as a co-defendant in the writ commencing this suit.  It was admitted that he was insolvent, and had taken the benefit of the insolvent acts.  A release was executed to him by John M. M'Coy, and read; after which he offered to examine William as a witness on his behalf, which was objected to by the counsel for the plaintiff below, and the court sustained the objection; to which the defendant below took exception.  This point was ruled in Black *v.* Marvin, 2 *Penns. Rep.* 138, where this court held that " the interests of the witness and defendant were inseparable.  They were partners as carriers (here as contractors for making the canal), and the joint funds would be decreased by an execution against either, so that the witness had an interest paramount to the release."  The court below, therefore, were right in rejecting William J. M'Coy as a witness.

The next and last error assigned is to the charge of the court to the jury, in instructing them " that the papers in the canal office undoubtedly establish a partnership;" thereby, as the plaintiff in error alleges, withdrawing the facts of partnership or no partnership from the jury.

What the court said to the jury, after referring to and repeating the substance of the contract entered into by William J. M'Coy and John M. M'Coy with the state for making the canal, and the receipt given afterwards by John M. M'Coy for 120 dollars paid to him on the contract, was this : " thus you see by the contract a partnership was established; and when the work is nearly completed, the defendant draws 120 dollars of the money for the firm.  These papers in the canal office, show the highest evidence of partnership; and in the absence of other evidence, they undoubtedly establish a partnership."  Now as these papers (meaning the contract and receipt given in evidence) were both in writing, it was the duty of the court to expound them, and to direct the jury as to their legal effect in the absence of all parol evidence to change their operation.  So far from there being error in the court in undertaking to direct and to instruct the jury positively as to the legal effect of these writings, it appears to me that the court was bound to do so, and that it would have been error in the court to have avoided it.  Then as to the instruction itself which was given, I perceive no error in it.  The writings

showed clearly a joint interest on the part of William J. M'Coy and John M. M'Coy, in the benefits which were no doubt expected to arise from making the canal, and a joint obligation to contribute to the expense that should attend the constructing of it. And so far from there being any parol evidence given, that I can perceive, which could tend to counteract the legal operation of these writings, or to change their effect in favour of the plaintiff in error, that which was given rather went to show the joint interest and concern of John with William J. M'Coy throughout the whole progress of the work, and to establish his liability to the plaintiff below.

The judgment is affirmed.