## JACKSON v. TILGHMAN.

June 22, 1835.

*Rule to show cause why a new trial should not be granted.*

To an action brought by A against B, an attorney at law, for negligence in not instituting a suit against C, to recover a debt due by C to A, it is a good defence that the debt was not really owing by C to A, but to another person, at the time when the defendant was retained to institute such suit.

A mere order drawn by a third person on C, "to pay to the order of A, when in funds, the net amount of sales" of certain goods, and accepted by C, is not a negotiable instrument: if without consideration, it is subject to the revocation of the drawer; and if for a valuable consideration, it is an appropriation in favour of A; and in neither case can A maintain an action in his *own name* against C.

In the latter case, the action against B, for negligence in not instituting a suit against C as above, must be brought by the drawer of the order to the use of A.

THIS was an action brought by the plaintiff as surviving partner of the firm of Blount & Jackson, against the defendant, as an attorney at law, for negligence. The declaration is in *assumpsit*, founded on a retainer by Blount & Jackson of the defendant to bring, prosecute and conduct an action of trespass on the case, &c., on their behalf, against Snowden & Wagner of the city of Philadelphia.

On the trial, it appeared that John Baillie, of Plymouth, North Carolina, had shipped a quantity of turpentine to David Ware of Philadelphia, who dying before or about the time of its arrival, it was received by Snowden & Wagner. On the 19th of July 1819, Blount & Jackson, of the city of New York, addressed a letter to Snowden & Wagner, of which the following is a copy. "We have Mr John Baillie's order on you for the net proceeds of six hundred and fourteen barrels of turpentine, shipped to the late David Ware: you will please inform us whether the turpentine has been sold or not, and if sold, when you will probably be in cash for it." In reply to this, Snowden & Wagner, on the 22d of July 1819, wrote: "We regret to say we have not as yet been able to dispose of the turpentine belonging to our mutual friend John Baillie, Esq. but as soon as we possibly can, shall do it, and hold the proceeds subject to your order." A second letter was written by Blount & Jackson to Snowden & Wagner, dated July 24th, 1819, in which they say: "Yours of the 22d current is before us, by which we learn that you have

not yet made any disposition of the turpentine for which we have an order : whenever you do effect a sale, you will please give us notice."

The order of Mr Baillie, above referred to, was not sent by Blount & Jackson to Snowden & Wagner ; and with this letter of July 24th, 1819, the correspondence of the parties ceased until the 18th of July 1820, when a third letter was transmitted by Blount & Jackson to Snowden & Wagner, of the following tenor. "We have been expecting for some time to know the amount of the net proceeds of the turpentine, shipped by Mr John Baillie, so that we might draw on you for the amount. You will oblige us to let us know at what time we may expect you will advise us that we may draw, and for what probable amount : Mr Baillie's order will be forwarded to you when we draw, or sooner if you require it." Snowden & Wagner replied to this immediately : "We handed Mr Baillie an account of sales of his turpentine in *November last,* since when he has drawn occasionally for the balance, and his last draft, in full, was paid ten days since, amounting to 141 dollars."

The receipt of this occasioned another letter on the 22d of July 1820, from Blount & Jackson, in which, after expressing their surprise that Snowden & Wagner had paid the proceeds of the turpentine to, or bills of Baillie in favour of, other persons than themselves, they add : "Mr Baillie purchased the turpentine in North Carolina ; *drew bills on us, which were paid;* and we expected the turpentine here, but he thought it best to ship to Philadelphia, and sent us an order on you directing you to hold the proceeds subject to our order." They then review the correspondence between themselves and Snowden & Wagner in 1819, and assert that Snowden & Wagner had paid Baillie's drafts in their own wrong; and hoping that Snowden & Wagner will see the subject in the same light, request authority to draw on them for the amount of the proceeds of the turpentine, offering to transmit Baillie's order of July 5th, 1819, with their draft.

On the 26th of July 1820, Snowden & Wagner returned an answer to this, in which they state the substance of a correspondence between themselves and *Baillie,* subsequent to the receipt of Blount & Jackson's letter of the 22d of July 1820; reassert their payment in full to Baillie, for the turpentine ; *deny all knowledge of advances* by Blount & Jackson to Baillie on account of the turpentine ; and regarding the order of July 5th, 1819, as a bare autho-

[Jackson v. Tilghman.]

rity, coupled with no interest on the part of Blount & Jackson, affirm a right in Baillie to countermand it at his pleasure; allude to the long silence of Blount & Jackson and to their retention of this order, and from all these circumstances infer a total exemption by them from all liability to Blount & Jackson.

The order of Baillie of July 5th, 1819 was in these words: "When in funds from the sale of six hundred and fourteen barrels of turpentine shipped to the late David Ware by me, pay the net amount of sales thereof to the order of Messrs Blount & Jackson, and charge it to your obedient servant."

This order, together with the foregoing correspondence, was transmitted to the defendant in October 1820, and remained in his possession until September 1828, when, upon a written order, hereafter noticed, of Mr Jackson, as surviving partner of the firm of Blount & Jackson, they were delivered to Robert C. Martin, who was examined by the plaintiff as a witness.

Mr Martin had addressed a letter to Blount & Jackson, and in reply received from the plaintiff, as surviving partner of that firm, the following order on the defendant. "You will please to deliver to Mr Robert C. Martin, all such papers as were put in your possession by the late firm of Blount & Jackson, relating to a suit which you were employed by that firm to conduct against Messrs Snowden & Wagner of Philadelphia, *on account of Samuel Hymar, Esq., of North Carolina.*" Martin had always understood the claim against Snowden & Wagner to have been owned by *Hymar* in his lifetime, or his estate since his decease.

Mr Martin, as the agent of a Mr Bryan, the executor of Hymar, after having received the papers upon this order, placed them in the hands of Mr Page, with directions to commence a suit against the defendant for his neglect to sue Snowden & Wagner. In a reply to a note of Mr Page, the defendant, under date of September 15th, 1828, gave a written reply, "that no suit had been entered by him on record, at the instance of Blount & Jackson against Snowden & Wagner."

The several letters and other documents noticed in the foregoing statement, were all given in evidence by the plaintiff, without objection, and, with the oral testimony of Robert C. Martin, constituted the whole evidence in the cause. The defendant produced neither witness nor document of any description.

Verdict for the plaintiff.

I.——E

[*Jackson v. Tilghman.*]

The defendant moved for a new trial. The points of the case appear fully by the opinion of the court.

*P. A. Browne,* for plaintiff.
*D. P. Brown,* for defendant.

The opinion of the Court was delivered by

STROUD, J.—The counsel for the defendant requested the court to charge the jury on six points, but of these, the argument before us has rendered it unnecessary to notice more than the two following:

1. That if at the time the papers were deposited with Mr Tilghman, the interest in the claim against Snowden & Wagner had passed from Blount & Jackson to Hymar, or any other person, this action in the name of Jackson, as surviving partner of Blount, cannot be sustained; the omission to sue having been to the injury of the party interested.

2. That the order drawn by Baillie was not a draft, or negotiable instrument authorising a suit to be brought in the name of Blount & Jackson, but that the suit should have been brought in the name of Baillie, to the use of Blount & Jackson, in which case, if there appeared to be no valuable consideration for the order, Snowden & Wagner would have been entitled to set off the subsequent drafts of Baillie, paid by them.

1. The answer of the court on the first point was favourable to the defendant, and, it is alleged, the evidence applicable to it, clearly established the fact that Hymar, and not Blount & Jackson, was, at the time mentioned, the owner of the claim; and, therefore, the directions of the court were entirely disregarded by the jury, or the character of the evidence was misapprehended by them. With the instructions of the court we fully concur; Gunn *v.* Castine, 10 *Johns.* 387; and in regard to the evidence, we think it was such as not to leave a doubt, that, at the time indicated, to go no further back, Hymar was the only person interested in the proceeds of the turpentine. The order of the plaintiff, Jackson, to the defendant, to deliver the papers to Martin, taken by itself, would be *conclusive* on this point, and being in writing, its construction was peculiarly within the province of the court.(*a*)   It is an admission of the plaintiff himself, and on this account is evidence of the highest character. Nor was there any evidence inconsistent with its plain import. The testimony of

(*a*)   M'Coy *v.* Lightner, 2 *Watts* 347, published since this opinion was given.

[Jackson v. Tilghman.]

Martin, so far as it bears on this point, was corroborative. For a year or two, in which he was endeavouring to elicit information from the defendant, in relation to the suit directed to be brought against Snowden & Wagner, he had no knowledge of Blount & Jackson; he had not so much as heard their names; he acted solely at the instance and on behalf of Mr Bryan, whose authority rested entirely upon the debt having been Mr Hymar's at his death. The only counteracting testimony was the implication to be derived from the correspondence of Blount & Jackson, and Snowden & Wagner; but this is of very little value, and not to be set in competition with the express written declaration of Jackson in his order to the defendant, namely, that the suit to be brought against Snowden and Wagner *was on account of Hymar.*

2. To the second point, as above stated, (taking the allegations of the defendant in the reasons assigned for a new trial as substantially correct) the court answered that the order given by Baillie to Blount & Jackson, although not a negotiable instrument, enabled Blount & Jackson to sue in their own names; that although not for a valuable consideration, its acceptance by Snowden & Wagner was an appropriation of the funds in their hands, and that Baillie could not revoke this order, nor could a claim against him be set off against Blount & Jackson.

The defendant complains of this answer, as a misdirection of the court, and his complaint is well founded. The answer assumes what is undoubtedly correct, that Baillie's order was *not* a negotiable instrument. It assumes, too, that it was given without a valuable consideration, yet affirms that its acceptance by Snowden & Wagner was an *appropriation* of the funds in their hands, and that a suit could have been maintained by Blount & Jackson in their own names, against Snowden & Wagner; and further, that though not a negotiable instrument, and without a valuable consideration, it was, nevertheless, irrevocable by Baillie. In each of these particulars there was plain error. The doctrine of *appropriation* depends essentially upon the existence of a valuable consideration; a previous indebtedness or contemporaneous benefit to one party, or loss to the other. Sharpless *v.* Welsh, 4 *Dall.* 279; Corser *v.* Craig, 1 *Wash. C. C. R.* 424; Hodgson *v.* Anderson, 3 *Barn. & Cress.* 837 (10 *Eng. C. L. Rep.* 247); Robertson *v.* Fauntleroy, 17 *Eng. C. L. Rep.* 94, which, with the exception of the consideration, is the same in all important particulars as the present case. Excluding such a

consideration, the order, though in writing, would be a *nudum pactum*. Rann *v.* Hughes, 7 *D. & E.* 350, *note.* If, indeed, no debt was due from Baillie, nor any credit obtained by him on the faith of the order, it is difficult to see for what object the appropriation was to be made ; and if a naked order, not coupled with an interest, it might be revoked at any time, without notice to Blount & Jackson. Hunt *v.* Rousmanier, 8 *Wheat.* 174. It is needless to cite authorities to show that, regarding the facts to be as the answer of the court assumes, the action ought not to have been brought in the name of the present plaintiff. Corser *v.* Craig is a stronger case, and there the name of the original party was used.

It may be proper to add, that although the proof was very slight and unsatisfactory, the assertions of Blount & Jackson, contained in their letter to Snowden & Wagner of July 22d, 1820, furnished some ground for submitting the question of a valuable consideration to the jury, and if this had been found, the case would have borne a strong analogy to Israel *v.* Douglass, 1 *H. Bl.* 239, and fallen within the authority of Mouledale *v.* Birchall, 2 *Bl. Rep.* 820 ; and Fenner *v.* Mears, *Ibid.* 1269.

In granting a new trial, we have the concurrence of the judge who tried the cause, for he was dissatisfied with the verdict, as contrary to the evidence, and to his charge on the first point, as above stated.

Rule absolute.