[PHILADELPHIA, APRIL 8TH, 1839.]

## WOLLE *against* BROWN.

### IN ERROR.

1. In assumpsit for goods sold, where the defence was, that certain persons not joined with the plaintiff, were partners with him, evidence of transactions with the plaintiff, with and on behalf of the alleged partners, and of their acts in relation to their business, was held to be admissible.

2. But declarations of one of the alleged partners to the fact of partnership, are not admissible, without distinct and substantive evidence, *aliunde*, of the fact.

3. The list of the storekeepers returned to the clerk of the Quarter Sessions, is not admissible evidence in respect to the ownership of goods, in a question of partnership.

ERROR to the Court of Common Pleas of Northampton county.

Edwin P. Wollè, brought an action of assumpsit in that Court, against Peter Brown, for goods sold and delivered, &c. The defendant pleaded non-assumpsit, &c., and the cause came on for trial before BANKS, President, on the 28th of August, 1838.

The plaintiff produced his books of original entries, showing the purchase by the defendant, and closed.

The defendant alleged, that the goods sold did not belong to the plaintiff alone, but were the property of William Wollè, Peter Kern and the plaintiff. Several witnesses were examined in relation to this point.

The deposition of Jacob Hoppock, taken in New York, was offered by the defendant, objected to on the part of the plaintiff, but admitted by the Court and read. This witness testified to certain transactions of the plaintiff, with the firm of Hoppock & Apgan, consisting among others, of the purchase of goods by the plaintiff, which he ordered to be charged to the firm of Wollè & Kern, and to be marked with his name and forwarded to him.

The defendant also offered in evidence, several letters to Hoppock & Apgan, relating to the purchase and forwarding of goods, signed sometimes Edwin P. Wollè, and sometimes Wollè & Kern, by E. P.

(Wollè v. Brown.)

Wollè. These letters were objected to, but admitted. George W. Housel, testified (subject to the same exception), that goods came to his store, and were taken away by Wollè & Kern's teams, by E. P. Wollè's order, who said that the goods were for him, &c. The defendant then offered to prove declarations of Wm. H. Wollè, in respect to the ownership of the goods, made in the store, but in the plaintiff's absence; which declarations were objected to by the plaintiff, but admitted by the Court. After some other testimony had been given, Samuel Seigfried testified, that he sent an order to the plaintiff's store for goods. The defendant's counsel then called on the plaintiff for the order, who being affirmed, said, " I never saw such an order as the one called for, nor have I it in my possession." The Court then allowed evidence to be given, that the order was directed to Wollè & Kern, and that the goods were furnished.

The plaintiff after other testimony had been given, offered in evidence a receipt for rent, paid by him to the landlord of the store, which was rejected by the Court. He also offered the list of store-keepers, in the county of Northampton, returned on oath to the clerk of the Court of Quarter Sessions of that county, which was also rejected by the Court and exception taken.

The jury found a verdict for the defendant, and the plaintiff took a writ of error, and filed the following specifications :—

" 1. The Court erred in admitting the depositions of Jacob Hoppock and testimony of George W. Housel.

2. The Court erred in admitting the letters directed to Hoppock & Apgar.

3. The Court erred in admitting in evidence the declarations of William H. Wollè, made in plaintiff's absence.

4. The Court erred in admitting S. Seigfried to prove that he directed the order (not produced) to Wollè & Kern.

5. The Court erred in rejecting the receipt of Thomas Gold for the rent of the store.

6. The Court erred in not permitting the plaintiff to give in evidence the list of storekeepers in Northampton county."

Mr. *Maxwell* and Mr. *Porter*, for the plaintiff in error, cited 1 *Starkie's Evid.* 52. *Rogers* v. *Hall*, (4 *Watts*, 359.) *M'Kee* v. *Gilchrist*, (3 *Watts*, 230.) *Chambers* v. *Davis*, (3 *Wharton's Rep.* 40.) *Whitehill* v. *Johnson*, (11 *Serg. & Rawle*, 329.) *M'Mullen* v. *Wenner*, (16 *Serg. & Rawle*, 18.) *Reichart* v. *Castator*, (5 *Bin.* 109.) *Bartlett* v. *Delprat*, (4 *Mass. Rep.* 702.) *Collier on Partnership*, 453. *Whitney* v. *Ferris*, (10 *Johns.* 66.) *Marten* v. *Klaproth*, (16 *Serg. & Rawle*, 120.) *Osgood* v. *Manhattan Co.* (3 *Cowen*, 623.) *Robbins*

(Wollè *v.* Brown.)

*v. Willard,* (6 *Picker.* 464.)    *M'Pherson* v. *Rathbone,* (7 *Wendell,*
216.)    *Corps* v. *Robinson,* (2 *Wash. C. C. Rep.* 388.)    *Tuttle* v.
*Cooper,* (5 *Picker.* 414.)

Mr. *Reeder* and Mr. *A. E. Brown,* for the defendant in error, çited 3
*Starkie,* 1074.    *Roscoe on Evid.* 31, 374, 106.    1 *Starkie,* 43, 46.
*Carey on Partnership,* 139.    *Wood* v. *Connell,* (2 *Wharton's Rep.*
542.)    *Johnston* v. *Warden,* (3 *Watts,* 101.)    *Holmes* v. *Keitlinger,*
(4 *Yeates,* 532.)    *Reitenback* v. *Reitenback,* (1 *Rawle,* 362.)

The opinion of the Court was delivered by

GIBSON, C. J.—There were two things to which the defendant's
evidence was to be directed—the existence of the partnership, and
the supposed participation in the business of it, by those who were
alleged to have been partners.    For the latter of these, the course
of the business and their acts in relation to it, were entirely proper ;
and this so far disposes of the case, that only two of its points remain
to be noticed.

The declarations of one of the alleged partners, were received as
corroborative evidence of the partnership ; and the first thing that
strikes us in regard to it, is an idea that it was received as evidence
of a fact, which it was necessary to establish, in the first instance,
in order to make way for it; for which, according to *Griffith* v.
*Reford,* (1 *Rawle* 197,) and *Quinn* v. *Crowell,* decided at this term,[*]
it was incompetent.    If the existence of the partnership, be the
authority for its introduction, the fact must first be proved by inde-
pendent evidence.    If it be not so proved, it stands as if no evidence
were given of it; for evidence short of proof, leaves the matter where
it found it; and if the fact be already established, the evidence of it
needs not corroboration.    I am unable to conceive how a thing can
be evidence to corroborate, which is not evidence of itself.    If it con-
duce, in any degree, to proof of the fact, I see no reason why it
should not be permitted to do so single-handed; for the competency
of evidence depends not on the intensity of its force; and if it do not so
conduce, I know not how it can corroborate any precedent evidence
of it.    Nor does any analogy from other parts of the law, bear the
opposite supposition out.    In cases of conspiracy, the confessions of
a confederate are received, not to corroborate the evidence of a
confederacy—for that must be first established—but to charge the
accused with the acts of his fellows.    *Rex* v. *Stone,* (6 *T. R.* 527.)
Where, indeed, it would otherwise be difficult to implicate him, it
has been permitted, first, to show the existence of the conspiracy, by
the acts and declarations of the confederates, and afterwards his
connexion with it; but it has been truly remarked, that this apparent
deviation from the rule, is no more than an inversion of the usual

[*] *Ante,* page 334.

order for the sake of convenience, and that such evidence is material in the result no further, than the assent of the accused to the conspiracy can be shown. 2 *Starkie's Evid.* 235. There is in truth no such thing in the law, as evidence which is competent to corroborate, but competent to nothing else; and we should search in vain for a head under which to place it. The rule which charges conspirators by the confessions of each other, is essentially the rule which charges partners by the admissions of each other, and depends for its effect on the same circumstances of previous relation. Its principle is, that the confession of a man is evidence against himself, and those who have made common cause with him; consistently with which, it was held in *Taylor* v. *Henderson*, (17 *Serg. & Rawle*, 463,) that the existence of a partnership, may be proved by the separate admissions of all who are sued; and in *Martin* v. *Kaffroth*, (16 *Serg. & Rawle*, 125,) that it cannot be proved by the admission of a third person. So far was it carried in *M'Coy* v. *Lightner*, (2 *Watts*, 349,) that the allowance of particular items by a partner sued but not served, was deemed competent, only because the partnership had been separately proved. Here the declarations were by a partner who was not even sued; and without evidence satisfactory by itself, to connect the plaintiff with the partnership, they must be taken for the gratuitous assertions of a third person. The only apparent exception to the rule, is found in *Chambers* v. *Davis;* but in that case separate evidence of the partnership had been given, and the note was admissible on the foot of it at least, to charge the firm with the payment for which it was offered.

The rejection of the list of storekeepers returned to the clerk of the Sessions, and offered as evidence in relation to the partnership, is sustained by *Wood* v. *Turner*, (7 *Watts*, 486,) where such evidence is shown to be inadmissible.

Judgment reversed, and a *venire de novo* awarded.