The opinion of the Court was delivered by
Sergeant, J.
The defence in this suit embraced the grounds taken in Mason v. Connell, and others not arising in that case. In the first place, the sale by the present plaintiff was made on the 8th June, 1829, which was subsequent to the date of the paper executed by Connell and Worley, revoking the partnership of the 1st September, 1828; and the defendants contended that the firm was, in no event, liable for this debt. The plaintiff answered that the paper of the 1st June, 1829, was antedated ;'and called witnesses to show that Connell was absent from Philadelphia at that time. In the next place, the defendants set up the release executed by the plaintiff to Connell on the 20th August, 1829, as a bar to his present demand. The plaintiff insisted that this'release was fraudulently obtained, and was therefore not binding on the plaintiff) who had refused to receive a dividend under Connell’s assignment.
Two points were reserved on the trial. 1st. How far the alleged fraud would affect the validity of the release. 2d. Whether the deposition of Connell was admissible in evidence. Besides these reserved points, on an objection made by the defendants, to a question proposed by the plaintiff to Richard C. See, a witness for the plaintiff) the question was overruled; and this forms another ground of the plaintiff’s motion for a new trial. The second reason for a new trial, assigned by the plaintiff, does not appear to be correct in fact; and the 4th has not been urged.
The first question is, how far the validity of the release, as a bar to this suit, is affected by the alleged fraud in its procurement. It is contended by the plaintiff) that Worley & Welsh were at the time of the sale of the goods for which this action is brought, dormant partners of Connell, in the mercantile house in his name at Pitts-burg: that on the'21st June, 1829, he made an assignment of all his estate, goods, debts, &c. to Francis Worley in trust, and in that assignment which was executed by Connell, of the one part, and Francis Worley, of the other part, they represented Worley & Welsh to be creditors of J’ohn Connell, and gave them a preference as such, to the amount of upwards of eleven thousand dollars, being more than one-half of theassets of Connell; by virtue of which Wor-' ley & Welsh received that sum, leaving the unpreferred releasing creditors but about ten per cent, of their claims: that it was a fraud in the parties to that assignment, not only to conceal the fact of the partnership, but, in addition, to hold out Worley & Welsh as creditors, when they were partners with Connell, and co-debtors; and *397 to enable them to abstract a large amount of money from funds that ought to have gone to creditors; and that a release procured under such circumstances, is voidable at the option of the party imposed upon.
A release or any other conveyance obtained by fraud, will be set aside by a court of equity. A release to an insolvent under the stipulations contained in his assignment, is subject to this rule as much as any other. While on the one hand, the assigning debtor possesses the lawful power of paying such creditors first as he pleases, and of stijaulating that none shall receive any thing from the assigned funds unless they discharge him from their claims; on the other hand it is his duty to make a fair- and candid statement of his circumstances, and to avoid any thing like the,use of deception or unfair dealing to obtain a discharge. The creditors in general, can know little or nothing of his affairs; they must rely in a great measure, on his representations of his situation: and if he makes false representations in material matters, and there be mala fides in so doing, by means of which the creditors are subjected to ¡oss, a release obtained under such circumstances, may be avoided. This principle is stated in various cases; and in 2 Eq. Ca. Ab. 379, there is this case: If there be two dealers, and one of them is very much indebted to the other, and in order to get an abatement from him, he makes him believe he is insolvent, by absconding, skulking, or shutting up shop, and thereby procures a release or an abatement, when in truth the man was really solvent, the Court will relieve against such release: and this was agreed to have been done, and the case of Bonny v. Bonny, quoted for an instance. Secus, if the party had not just cause to fear the loss of his debt.
Now the case here supposed is, that the assignor and assignee combined to make the plaintiff believe that Worley & Welsh were creditors,.and to induce him to ratify ah assignment by which they were preferred for more than half the assets, and to give a release by which they are forever discharged from their liability to him; and that the plaiqtiff is to be bound by that release, notwithstanding it should afterwards turn out that these supposed creditors were in fact the debtors, that the money abstracted by them as a preferred debt, was in justice and law, the property of the plaintiff and other creditors ; and that they were bound not only to refund that money, but to make good all deficiencies. It is impossible to sustain such a proposition. Whether the ostensible partner is bound to disclose the name of a dormant partner, and how far his omission to do so would "render the latter liable when discovered, notwithstanding a release to the former, it is not necessary to determine: thought the dicta of judges in the case cited from Price’s Excheq. Reports are pretty strong on the point. But where there is not merely a suppressio veri but a suggestio falsi, not merely a suppression of the name of a dormant partner, but a representation that he is a creditor, and a *398 course of conduct calculated to mislead the creditors, and to divert a portion, of the funds of the ostensible partner into the hands of the dormant partner, to the injury and loss of the creditors, no doubt can be entertained of its being deemed in law fraudulent, and rendering the release inoperative.
It has been suggested that supposing the preference an undue one, the only consequence would be, that the assignee is liable for the amount, and must account for if to the creditors, but the release remains good. If the creditor chose to ratify the release, and-look to the assignee for the moneys misapplied, he might elect to do so. But he may also elect to consider a release fraudulently 'procured, as null and” void, and be remitted to his original rights. Even with the restoration of the abstracted funds, the assigned estate might not suffice to pay. Besides, the creditors ought in justice and equity to have received” the proceeds of that fund as soon as realized. It would be exceedingly unjust and oppressive' if after detecting an imposition, and a long delay, they were in no better situation than they would have been had nothing of the kind happened, and if they were at last compelled to force out of the assignee what should have passed into their hands in the regular course of settlement of the estate. It may also reasonably be questioned whether any release . would have been given,'had the circumstances then appeared as they are now stated to be.' If then, the partnership existed, the concealment of the names of the dormant partners, connected with the other matters alluded to, gives the plaintiff a right to treat the release as a nullity; and it is not a bar to his action.
2. Was the deposition of Connell evidence for the defendants? This deposition went to disprove the alleged partnership: to show its dissolution prior to the sale by the plaintiff: that Worley & Welsh were bona -fide creditors of the witness, and generally, to prevent the plaintiff’s recovery: and the defendants rely on the circumstance of Connell’s not being served with -process in this suit, and a release to him by the defendants, prior to his examination, of all claim or demand on account of moneys that might be recovered, as removing the objection, that he is a partner. The contrary, however, was decided by this court in the cases of Marvin v. Black, (2 Penn. Rep. 138,) and M‘Coy v. Lightner, (2 Watts, 347,) and the same point was determined in Young v. Bairner, (1 Esp.N. P. 103,) and Simons v. Smith, (1 Ry. & Mood. 29; 21 Eng. Com. L. Rep. 374.) The reason is that a judgment in favour of the plaintiff would authorise a payment of this debt by the defendants out of the partnership funds, or it could be enforced by execution; which would not be the case if the plaintiff failed. The interest of the witness in these funds as partner is, therefore, directly affected by the result of the suit. It is our opinion, that the deposition was inadmissible.
3. The decision of the second point renders the last immaterial; because it was to impeach the credit of Connell, that the plaintiff *399 offered the paper, in relation to which the question objected to was put- At the same time we have no doubt, the question was rightly-rejected. If a witness is called to speak to handwriting, and possesses a knowledge ©f it, from having seen the person write, .or seen his writing, he ought to be asked as to his belief, whether the paper is his hand-writing or not. To inquire of a witness in such case, what is his impression, is descending to a test too vague to form a judgment upon. It is like asking a witness, what was his understanding of a conversation, instead of inquiring what the parties said. The rule is stated in Phill. Eo. 421: “A witness may b'e asked, whether he has seen a particular person write, and after-wards whether he believes the paper in dispute to. be- his handwriting.”
New trial awarded.