## SMITH *against* SILLYMAN and Others.

### IN ERROR.

1. In an action against three joint obligors in a bond, the sheriff returned, that he had summoned one, and "*nihil habent*," as to the others: *Held*, that one of the obligors not summoned was not a competent witness for the defendant, although the latter paid into Court a sum sufficient to cover the principal and interest of the bond, and the costs of suit.
2. By articles of agreement, A. contracted to sell to B. a certain number of acres of coal land, and to execute a deed to him, on the payment of a certain sum of money. Afterwards B., by articles of agreement, sold to C. the said contract, on certain terms, viz. the payment of a certain sum of money at the time the deed was to be delivered by A., provided C. should be satisfied as to the title to the land; for which purpose a reasonable time was to be allowed for the investigation of the title. After this A. conveyed the land to C. with general warranty. In an action by B. against C., on a bond given by him for the purchase-money, under the contract, it was *held*, that C. could not set up as a defence, that the title to the land was defective, in consequence of which he had failed in an attempt to recover the land by ejectment.

ERROR to the District Court for the City and County of Philadelphia.

John K. Smith brought an action of debt in that Court for the use of Richard S. Field, to March term, 1832, against Samuel Sillyman, John Sillyman, and William F. Dean, upon a bond executed by the defendants to the plaintiffs, dated the 8th day of May, A. D. 1830, in the penal sum of $2000, with condition for the payment of $1000 on the 8th of November, then following, without interest.

The sheriff returned "summoned" as to Samuel Sillyman, "*nil habent*" as to John Sillyman and Wm. F. Dean. Samuel Sillyman pleaded payment with leave, &c., and upon this plea the cause came on for trial, before Judge Coxe, in February, 1833.

The plaintiff having given in evidence, the bond upon which the action was brought, and which appeared by the endorsements upon it to have been assigned by the obligee to Samuel Bassett, and by the latter to Richard S. Field, the defendant, for the purpose of showing what was the consideration of the bond, and that it had failed, gave in evidence the following agreements.

"Articles of agreement made and concluded upon, this 27th day of January, 1830, between Burckhart Moser, of Schuylkill county, *Pennsylvania, of the one part, and Samuel Bassett, and Edward Smith, of the other part, as [*590] follows, that is to say—

(Smith *v.* Sillyman.)

Article 1st. The said Burckhart Moser hereby covenants and agrees to and with the said Samuel Bassett and Edward Smith, and their assigns, to sell, convey, release, enfeoff and confirm unto the said Bassett and Smith, or their assigns, the equal undivided half part of two hundred acres of a certain tract of coal land, containing three hundred acres, more or less, situate in Schuylkill county, on Sharpe mountain, adjoining lands of Swift and Patterson, and Grafe and Dundas, and others. The said two hundred acres to be surveyed off the west end of the said tract, lying nearest to the Little Schuylkill river, on the following terms and conditions, to wit: the said Bassett and Smith, or their assigns, or some one of them shall on or before the 8th day of February next, come to the house of the widow Carsuer, near the premises, and declare their intention of taking the said premises, and pay down fifty dollars in gold or silver money, which shall consummate the agreement.

Article 2nd. After the payment of the said fifty dollars, on or before the 8th day of April, 1830, the said Moser and the other owners concerned in the premises, and having titles in the said undivided half part of the said tract of two hundred acres, shall make, execute and deliver in due form of law, unto the said Bassett and Smith, or their assigns, a good and sufficient deed of conveyance, for the said undivided half part of the said two hundred acres, clear, and freely cleared of all former judgments, mortgages, and all other claims whatsoever, with a general warrantee title, in fee simple: the said deed to be delivered on the said eighth day of April next, to the said Samuel Bassett and Edward Smith, or their assigns, at the widow Carsuer's.

Article 3d. The consideration money of the said deed, shall be six thousand dollars; one half payable in cash on delivery of the deed, and the other half to be paid within one year from the execution of the said deed, and to be secured by bond and mortgage on the premises, with interest from the date of the said bond and mortgage.

Article 4th. This agreement to be null and void, with all parties concerned therein, provided the said Smith and Bassett, or their assigns, or some one of them, shall not attend on the said 8th day of February, and pay down the said fifty dollars as aforesaid: And provided also, that the said Smith and Bassett, or their assigns, shall not comply with the conditions of this article, on the 8th day of April next; and in that case the said fifty dollars shall be forfeited, and remain the property of the said Moser, and this article of agreement to be entirely null and void as to all parties concerned therein.

Article 5th. And it is further agreed, that the said Bassett and Smith, or their assigns, shall and may have their choice

(Smith *v.* Sillyman.)

either to take a deed, as aforesaid, for the undivided half part of the said *two hundred acres, as above-mentioned, or may [*591] make a choice of one hundred acres of the said two hundred acre tract, on either end thereof, and take a deed for that one hundred acres so chosen by them, instead of taking a deed for the undivided half part of two hundred acres, as aforesaid, the terms remaining the same.

Article 6th. The admeasurement of the quantity of land is to be strict measure, without allowance."

On this agreement was endorsed a receipt, dated the 8th of February, 1830, for $50, in full for the money stipulated to be that day paid; and containing also an agreement to extend the time for taking the deed to the 8th of April.

"Articles of agreement made and concluded between John K. Smith, of Tamaqua, in the county of Schuylkill, and state of Pennsylvania, of the first part, and Samuel Sillyman, John Sillyman and William F. Dean, of Pottsville, county and state aforesaid, of the second part.

Know all men by these presents, that I, John K. Smith, in and for the consideration hereinafter mentioned, have bargained and sold, and by these presents do bargain and sell unto the above-named Samuel Sillyman, John Sillyman and William F. Dean, three equal undivided fourth parts of a certain contract for one hundred acres of coal lands, situate in the county of Schuylkill, on or near the Little Schuylkill river, adjoining lands now or late belonging to Swift or others, which Edward Smith and Samuel Bassett took of Burckhart Moser, and which the said Smith and Bassett afterwards conveyed one-third part of to Richard S. Field, of Salem, New Jersey; which said contract was, or is about to be conveyed to the said John K. Smith, by the said Edward Smith, for himself, and acting agent for the said Bassett and Field.

And the said Samuel Sillyman, John Sillyman and William F. Dean, each to pay their respective shares, being the one-fourth part each of ten thousand dollars, as follows, viz. : the sum of seven hundred and fifty dollars each, on the eighth day of May next ensuing, when a deed of the premises as aforesaid is to be delivered by the said Burckhart Moser and his partners; provided the parties of the second part are fully satisfied as to the title of said land; otherwise the said first payment not to be made until so satisfied, and a reasonable time to be allowed for the investigation of the same; and when the said title shall be fully established, the parties of the second part hereby bind themselves to take the deed aforesaid. And the said parties of the second part further agree to give their joint obligations (on

(Smith *v.* Sillyman.)

the day the said deed shall be taken,) unto the said John K. Smith, for the sum of three thousand dollars, payable in six months after that date; and the parties of the first and second parts agree to give a mortgage to the said Burckhart Moser and [*592] partners, for three *thousand dollars on the said premises, payable in one year after the date of the deed.

In witness whereof, the parties have hereunto interchangeably set their hands and seals, this twenty-third day of April, in the year of our Lord one thousand eight hundred and thirty (1830)."

The defendant then called William F. Dean, as a witness, who was objected to on the part of the plaintiff, and rejected by the Court, although released by the defendant.

The defendant then paid into Court the sum of thirteen hundred dollars, and filed a memorandum, a copy of which is incorporated in the following order:—

"The Court, on motion of Thomas Kittera, Esq. permitted the defendant to pay into Court the sum of thirteen hundred dollars, the amount of debt, interest, and costs in this case, to remain in Court until the final judgment in this case. The amount of the plaintiff's debt, interest, and costs, in case he shall recover, to be taken out of Court in satisfaction of the judgment. And the amount thus paid to be taken out by the defendant, in case a verdict and final judgment shall be for the defendant, for the purpose of rendering William F. Dean, a co-obligee in the bond on which the suit is brought, a competent witness for the defendant."

The attorney for the plaintiff admitted thirteen hundred dollars to be sufficient in amount.

The plaintiff's counsel then moved to take the money out of Court, and the motion was refused by the judge.

The defendant then again offered William F. Dean as a witness, and the plaintiff objected to his admission. The Court overruled the objection, and admitted the witness.

Whereupon the plaintiff's counsel excepted to the decision of the Court, and tendered a bill of exceptions to the same.

William F. Dean and others were then examined as witnesses in respect to the contract between the parties, and the circumstances attending its inception and execution.

The record of an action of ejectment brought in Schuylkill county to July term 1831, by Samuel Sillyman against The Lehigh Coal and Navigation Company, which was tried on the 28th of December, 1832, when a verdict was given for the defendants was offered in evidence by the defendant, to show his exertions

(Smith v. Sillyman.)

to recover the land in dispute, to be followed by evidence of notice and other matters. This was objected to by the plaintiff, on the ground that no *notice appeared to have been given, and because the record was incomplete; the last [*593] entry being "December 28th, 1832, Judgment Nisi."

On the 7th of May, 1830, Moser and others conveyed to Samuel Sillyman, in fee, five-sixth parts of the premises in question, in consideration of $5000. This deed, contained a general warranty of title against all and every person and persons whomsoever. This deed was dated the 7th of April, 1830.

By deed dated the 7th of May, 1830, George Sitler and others conveyed to Samuel Sillyman, in fee, one-sixth part of the same, in consideration of $1000—with the same general warranty of title.

After the evidence was closed, the plaintiff requested the Court to charge the jury—

"1. That the doctrine of resisting the payment of purchase-money where the title proves defective, is not applicable to the payment of money, the mere consideration of the transfer of an agreement to receive the conveyance of land.

2. That it does not apply to the case where the conveyance contains a good and available warranty of title.

3. That if the other owners of the property in question had refused to confirm the contract of Burckhart Moser, of the 27th of January 1830, then the remedy would have been to recover damages under the agreement.

4. That if the jury are of opinion that the parties under the agreement of the 30th of April, 1830, intended that the obligors should after the acceptance of the deed from Moser and others, run the risk of the title, then the plaintiff has a right to recover.

5. The Court is requested to direct the jury to reject as evidence the testimony of William F. Dean, that J. K. Smith was to examine the title of the property in question.

6. Also to reject the evidence of declarations alleged to have been made by J. K. Smith, after the 27th of May, 1830."

The learned judge charged in substance as follows:

"This is an action instituted by John K. Smith, for the use of Richard S. Field, against Samuel Sillyman, John Sillyman, and William F. Dean, to recover the amount of a bond for two thousand dollars conditioned for the payment of one thousand dollars on the 8th of November, 1830, without interest. The writ was served on S. Sillyman only; he alone has been proceeded against by the plaintiff, and now stands as the only defendant on the record. By his plea, the defendant admits the execution of the bond, and rests his defence on the

(*Smith v. Sillyman.*)

[*594]  failure of the. consideration, alleging that it was *given for part of the consideration money of a tract of one hundred acres of coal land in Schuylkill county, and that the title to the land having been proved to be defective and void, the consideration of the bond has failed, and he is not bound to pay it. Articles of agreement were entered into on the 27th of January, 1830, between Burckhart Moser of the one part, and Samuel Bassett and Edward Smith, for the sale and purchase of one hundred acres of coal land. [Here his Honour read the contract.]

By this contract, the equitable title to this land, so far as it was in B. Moser and those whose agent or attorney he may have been, passed to Smith and Bassett, subject to their complying with their part of the contract; and, they complying with their part and their assigns, could maintain ejectment against B. Moser, and those owners who had authorized him to act for them; or an action for damages might have been sustained against B. Moser, had he dishonestly or unlawfully refused to comply with his agreement, or failed to procure the conveyance he contracted to obtain, if the Moser title had been a good one, (Sug. 174.) On this contract Bassett and Smith, and their assigns, if they should succeed in proving the Moser title a bad one, could obtain no damages for the loss of their bargain, if they had sued for the recovery of the money paid in assumpsit, and if they had affirmed the agreement by bringing an action for damages for the non-performance of it, they could only obtain nominal damages for the loss of their bargain, if the Moser title be a bad one, because a purchaser is not entitled to any compensation for the fancied goodness of his bargain, which he may suppose he had lost, where the vendor is, without fraud, incapable of making a title. B. Moser, and the heirs of his father who authorized him to contract, became trustees of their respective interests for Smith and Bassett and their assigns. All the heirs, with the exception of minors, representing one-sixth, subsequently ratified the contract, by executing the deed to the defendant Sillyman, and may therefore be supposed, in the absence of proof to the contrary, to have authorized B. Moser to contract. The guardians of the minors also, so far as they were able, approved his acts, and executed the deed given in evidence, with their hands and seals, relating to that one-sixth. On the 8th of February, 1830, Bassett and Smith paid B. Moser the $50, and he extended the time for taking the deed, from the 8th of April to the 8th of May. "A title to land, under an agreement for its purchase, is a title to the estate in fee simple in possession, subject to the decision of a Court of equity upon the right to a specific performance. It is a devisable interest, and not a mere pretended right or title."

(Smith v. Sillyman.)

Sug. on Vend. 348. The purchaser, from the time of the contract, is in equity the owner of the estate, and may sell, devise and dispose of it in the same manner as if the fee were actually conveyed to him; although, if ultimately a Court of equity refuse a specific performance, the devise, *sale, or other disposition, necessarily falls to the ground. Upon a [*595] sale of an interest under a contract, the seller becomes a trustee for the second purchaser, and the second purchaser is, without entering in a covenant, bound to indemnify him against all costs incurred in proceedings for his benefit. The Court not only consider it not unlawful, but compels him to permit his name to be used for the benefit of the second purchaser. In Pennsylvania, on such articles, there being no Court of equity, ejectment may be sustained, and the land recovered from the person having the legal title, if he refuse to convey. When the party intended to convey, and the other expected to receive a good title, it is but equity that the purchaser should have relief in case of any defect in title, although there was no express agreement to that purpose. Where the intent was that the purchaser should run the risk of the title, there is not a word to be said for him. Such intent may be fairly inferred, when he knew of the defect at the time of purchase, and made no provision against it in his agreement. *Hart* v. *Executors of Porter*, (per Tilghman, C. J. 5 Serg. & Rawle, 204, 205). A purchaser not having paid his money, may defend himself under a defect of title, when part of his purchase has been evicted, although he has accepted a conveyance with no more than a special warranty, and when there has been no eviction, and the title is defective also. Id. 206. On the 23d of April, 1830, John K. Smith executed articles of agreement with S. and J. Sillyman and W. F. Dean, for three-fourths of these one hundred acres or contract. (Here his Honour read the contract.) By this instrument, three-fourths of all the instrument of Bassett and Smith and Field, who had become interested, (whether J. K. Smith was their agent, or the principal, as asserted, of their interest,) passed to the Sillymans and Dean. They became owners of the three-fourths of the land as fully as Bassett and Smith would, subject to their complying with their contract; and the bond in question, or money received by it, is proved and admitted to be part of the consideration of this contract, or assignment, or agreement, by which the land did pass, if the Mosers owned it originally; but the plaintiff denies it to be the consideration for the land, and alleges that it was only for the title, good or bad, of J. K. Smith, or those he represented. Now, by the law, a man may sell a mere right to land; he may sell all his right, title and interest, whether he has a title or no title; and where the parties agree to

(Smith *v.* Sillyman.)

buy or sell such a title, the purchaser cannot set up a defect in the title which he purchased with his eyes open intentionally, against the payment of the purchase-money. No Court would relieve him or aid him in resisting the payment of his bond, or other security for the purchase-money. Is such a contract given in evidence? If there be any ambiguity in this contract, it principally arises from the language where J. K. Smith is said to have bargained and sold " three equal and undivided fourth parts [*596] of a certain contract for the sale of 100 *acres of coal land." The question is, therefore, whether on the face of the contract, as unexplained by other evidence, or from it and the other testimony, the parties agreed to sell and purchase a mere right, and the purchaser to run the risk of the title. On the face of the contract, I am of opinion, it does not clearly appear that the risk of the title was to be run by the purchaser, either as to the $6000 paid or secured to the Mosers, or as to the $3000 for which the bonds were given to J. K. Smith, and assigned by him to Bassett and Howell Smith. Whether such appears from the evidence and explanation of the contract to have been the understanding or agreement of the parties, must be judged of and determined by the jury, under the direction of the Court, as to the matters of law.

I have been requested to charge upon the different points presented by the plaintiff.

1. I have answered the first point already in my general charge. The doctrine of this point is applicable to a sale of land, the equitable title to which is only in the vendor, under articles for the purchase and sale of land, the legal title remaining in the original vendor, who agreed to sell, but executed no deed of conveyance of the legal title: to such an instrument as is described in this proposition, it may not extend; but to the contract given in evidence, dated the 23d April, 1830, for which the bond in suit was part of the consideration, it does extend, unless by the terms of the instrument, or evidence in explanation of it, it should appear it was the intention of the parties to sell and buy a mere right, and the purchaser undertakes to run the risk of the title.

2. Although the conveyance does contain a good and available warranty of title, yet the doctrine referred to in this proposition does apply.

3. The third proposition I have answered in my general charge.

4. On this point I·agree with the plaintiff.

5. On this point I agree with the plaintiff. If J. K. Smith agreed to investigate the title, it must have been in his new character as a partner of Sillyman and others, and not as the agent of Field. It contradicts the written contracts, and does not ex-

(Smith v. Sillyman.)

plain any ambiguity; but as fraud is not alleged, I do not deem it very material.

6. If J. K. Smith assigned the bond on which this suit is founded, on or before the 27th May, 1830, (the assignment having no date,) his declarations alleged to have been made subsequently to that time, should be disregarded by the jury, as in such case they would not be evidence."

The plaintiff excepted to this charge, and the jury found for the defendant; when the plaintiff took a writ of error, and filed the following specifications.

"1. Because the Court below admitted William F. Dean, one of the co-obligors in the bond, as a witness, by virtue of the deposit by *the defendant of $1300 with the prothonotary, [*597] upon stipulation to be returned to him in case of judgment being rendered for the defendants.

2. Because the Court below refused to let the plaintiff take the sum of $1300 out of Court thus paid in.

3. Because the Court below admitted in evidence a survey of an adjoining tract made by strangers to this suit.

4. Because the Court below admitted the record of the ejectment of The Lehigh Coal and Navigation Company v. Samuel Sillyman.

    (a) Because S. Sillyman, the defendant, gave no notice to the plaintiff of the existence of said suit, or opportunity to take defence.

    (b) That the record itself is incomplete, inasmuch as it contains no final judgment.

5. Because the Court, in their charge to the jury, said that the doctrine of resisting the payment of purchase money in consequence of a defect of title, was applicable to the agreement of the 23d April, 1830.

6. Because the Court also said, that this doctrine was applicable to a deed with general warranty where there was a good and available warranty of title.

7. Because the Court, in declaring what was the intention of the parties to the contract of the 23d of April, 1830, divided the question into two divisions, one including the documentary evidence, the effect of which they decided as a question of law, the other of parol testimony, which they left to the jury; whereas, in such case, the Court should have left the whole documentary and parol testimony to the jury, as a question of fact, to be by them determined."

Mr. *Randall*, for the plaintiff in error.

1. Dean was not a competent witness. The act of the 6th of April, 1830, makes a co-obligor liable notwithstanding a judg-

(Smith *v.* Sillyman.)

ment against one on the same bond. The witness was directly liable, since a verdict for the plaintiff would leave him open to a future suit, and a verdict for the defendant would be conclusive. So the judge below thought; and the idea was then suggested of paying the money in. None of the cases have gone so far. *Steele* v. *The Phœnix*, (3 Binn. 306,) and *Willing* v. *Consequa*, (1 Peters's C. C. Rep. 308,) which have been much regretted, certainly do not countenance this. In *Clement* v. *Bixler*, (3 Watts, 248,) it is said, that costs paid in on such an occasion are not recoverable back. If a co-obligor can by this method be made a witness, why may not the actual defendant do the same. In *Wood* v. *Connell*, (2 Whart. 542,) the Court said that a co-defendant not made a party could not be a witness, though every avenue to interest was closed.

2. The case of *Steinhauer* v. *Witman*, (1 Serg. & Rawle, 447,) introduced a new doctrine in the law of vendors and purchasers. [*598] *In that case, however, there was a special warranty, and no opportunity given to the vendee to examine the title. It is said there, nevertheless, that when it appears that the vendee meant to take the risk of the title, he must pay the money; and the later authorities have not carried the doctrine any farther. *Dorsey* v. *Jackman*, (1 Serg. & Rawle, 42); *Hart* v. *Porter*, (5 Serg. & Rawle, 204); *Friedly* v. *Sheetz*, (9 Serg. & Rawle, 161); *Pennsylvania* v. *Sims*, (Addison, 9); *Poke* v. *Kelly*, (13 Serg. & Rawle, 165); *Chrystie* v. *Reynolds*, (10 Serg. & Rawle, 258); *Lighty* v. *Shorb*, (3 Penn. Rep. 447). Here the terms of the contract prove distinctly, that nothing was contemplated but an assignment of a previous contract. There was also an available general warranty for the defendants, which they may resort to, as Moser was solvent, and liable to them. The parties who assigned to Sillyman entered into no covenant of title. The only defect applicable to the plaintiff would be his inability to assign his interest, by reason of a judgment binding it, or other difficulty of that kind, or fraud on the part of the plaintiff, which is not alleged.

(The 3d, 4th, and 7th errors were abandoned.)

Mr. *Mallery*, (with whom was Mr. *Kittera*,) for the defendant in error.

1. There was no rule of law, or principle of policy in the way of the admission of witnesses. Roscoe, 89, 93; 2 Starkie, 703; *Baily* v. *Hale*, (3 Carr. & Payne, 560; s. c. 14 Eng. Com. Law Reps. 449); *Pearcy* v. *Fleming*, (5 Carr. & Payne, 503; s. c. 23 Eng. Com. Law Reps. 429); *Hudson* v. *Robinson*, (4 Maule & Selw. 475); *Riddle* v. *Moss*, (7 Cranch. 206; 2 Starkie, 747); *Wood* v. *Connell*, (2 Whart. Rep. 562); *Duke* v. *Pownall*, (1 Moody & Malk. 430; s. c. 22 Eng. Com. Law Reps. 350).

(Smith v. Sillyman.)

2. On the second point he argued, that the defendant had a right to set up a defect in the original title as a defence, although he had recourse upon a general warranty.

Mr. *Charles Ingersoll* was heard in reply on the second point.

The opinion of the Court was delivered by

ROGERS, J.—This is an action on a bond, for the use of Richard S. Field, against Samuel Sillyman, John Sillyman and William F. Dean. The sheriff returns, "summoned," as to Samuel Sillyman—"*nil habent*," as to John Sillyman and William F. Dean. This raises the question on the exception to the admission of William F. Dean, one of the obligors, as a witness. Without the deposit of the money with the prothonotary, upon the stipulation, to be returned, in case of judgment being rendered for the defendant, the witness would clearly be incompetent. By the act of the 6th April, 1830, whatever doubts may have existed before, judgment against the defendant would be no bar to a recovery in another suit against the co-obligors, though *not served with process. The witness was therefore directly interested in procuring a judgment for the [*599] defendant; for this would be a bar to a recovery against him, in a subsequent suit. And this would seem to have been the opinion of the Court; for the witness was rejected, in the first instance, and was afterwards admitted, solely, on the ground of the deposit of the amount claimed in Court. But, how does the deposit remove the objection taken on the score of interest? It is an additional security for the money, it is true, but still it does not amount to payment. It diminishes the risk, but the liability remains; and the amount of interest is nothing, so far as the question of competency is involved. The deposit does not extinguish the debt, and the witness was as obnoxious to suit as before. In this respect it differs from *Bailey* v. *Hale*, (14 Eng. Com. Law Rep. 449). At this trial it was discovered, that a witness for the defence was one of the bail, and therefore incompetent: the judge, on the defendants depositing a sufficient sum in Court, made an order for striking the witness's name out of the bail-piece, so as to render him a competent witness. All power in relation to special bail is under the entire control of the contract, and the effect of the order was in this case to substitute one security for another, and in most cases, affording a better indemnity to the plaintiff. It must be observed, that the bail, in *Bailey* v. *Hale*, were discharged from all liability. The name of the bail being stricken out of the bail-piece, removes all objection to his competency. But here, Dean, the co-obligor, is bound for the money, as one of the principals, and I am yet to

(Smith *v.* Sillyman.)

learn what right the Court has to discharge him from responsibility on the bond, without the consent of the obligees. We are of opinion, that the Court erred in admitting Dean as a witness.*

The next question arises on the construction of the contract of the 23d of April, 1830, whether the parties agreed to sell and purchase a mere right, and the purchaser to run the risk of the title. The Court decided, that it did not appear on the face of the contract that the risk of the title was to be run by the purchaser. Of this the plaintiff complains. In a contract for the sale of lands, a failure of consideration in an action for the recovery of the purchase-money is a good defence, in whole or in part, whether there be a general or special warranty. *Steinhauer* v. *Witman, Adm. of Myers,* (1 Serg. & Rawle, 438); *Hart* v. *Porter's Exr.* (5 Serg. & Rawle, 201). These decisions, as is clearly shown in *Lighty* v. *Shorb,* (3 Penn. Rep. 450,) are not founded on authority, but are supported only by long and uninterrupted usage. They are, however, too well settled to be open to argument; but whilst we recognise the principle, yet we have never felt inclined to extend them to cases to which they do not legitimately belong. Thus in *Friedly* v. *Sheetz,* (9 Serg. & Rawle, 156,) it was ruled, that a sheriff's sale cannot be objected to by the purchaser, on the ground of defect of title. *Lighty* v. *Shorb,* is in further restraint of the operation of this principle.

[*600] Justice *Duncan, observes, that "the case of *Steinhauer* v. *Witman,* is not well understood. It does not go to the whole length, as some have supposed, that a man who purchases a title, with all its defects and imperfections, and whose conveyance contains no covenant of warranty, *is* not bound to pay the bonds he has given for it." Mr. Justice Yeates, the great advocate for the departure from the general rule, both of law and equity, of *caveat emptor,* on the sale of lands, yet restrains its operation. He puts it on the principle, what was the true meaning of the contracting parties? was it contemplated mutually, that the purchaser should hold the lands under a good title, or that he should run his chance of getting a title, and be exposed to all hazards? What then was the nature of this contract?—for the intention of the parties must govern its construction. John K. Smith, who, together with others, had purchased from Moser one hundred acres of coal land, (the contract for the sale being *in fieri,*) agrees to sell the contract so made, to the defendant, or in other words, for a consideration therein stipulated, agrees that the defendant shall take their place as the purchasers from Moser. From the very nature of the agreement, in the absence of any express stipulation to the contrary, it

* See 1 Wharton, 398.

would seem, that the vendor did not intend to warrant the title to the premises, but that the vendees took the risk, relying on their own judgment as to the soundness of the title, and for indemnity on the original vendor. That this was the understanding, is further shown from the agreement, and the conduct of the parties. It is expressly agreed, (and the security of the vendees is said to be the object,) that the first payment shall not be made until the vendees are fully satisfied, as to the title to the land. This shows, that for this purpose they depended on their own judgment. When the title is fully established to their satisfaction, (for so I read the contract,) the vendees bind themselves to take the deed. By the agreement a reasonable time is allowed them to investigate the title for themselves. Until then, a defect of title would undoubtedly be a good defence: but after having examined it for themselves, and accepted the title, they are foreclosed from taking any defence, on the ground of a failure of consideration, so far as the present plaintiff is concerned. This construction is necessary for the protection of the plaintiffs, as they would have no remedy on the warranty. The deed was made to Samuel Sillyman, with general warranty: he, therefore, would alone have remedy on the covenant against Moser. If, therefore, Smith or Field had paid part of the purchase-money to Moser, they would be without remedy, unless a recovery can be had on this contract.

The remaining exceptions have not been sustained.

Judgment reversed, and a *venire de novo* awarded.

Cited by Counsel, 9 Watts, 308; 8 Watts & Sergeant, 35; 3 Barr, 155, 361; 6 Id. 84; 9 Id. 112; 10 Id. 74; 1 Harris, 342; 4 Casey, 290.
Cited by the Court, 6 Barr, 324; 9 Id. 497.